834 F.2d 166
 9 Fed.R.Serv.3d 919
 James L. SMITH, Plaintiff-Appellant,
v.
UNITED STATES of America, Internal Revenue Service,
Commissioner of Internal Revenue, and Norrell C.
Smith, Defendants-Appellees,
Sun Refining & Marketing Co., Defendant.
 No. 85-1719.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 2, 1987.
 
 William A. Cohan, Denver, Colo. (Robert A. Flynn, Tulsa, Okl., on the brief) for plaintiff-appellant.
 Matthew J. Anderton, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D.C.; and Layn R. Phillips, U.S. Atty., were also on the brief) for defendants-appellees.
 Before McKAY, McWILLIAMS, and BALDOCK, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiff-appellant James L. Smith (taxpayer) brought this action against various government defendants and his private employer on July 8, 1983, seeking: (1) injunctive relief from a federal tax levy on his wages, (2) restitution of monies collected pursuant to that levy, and (3) attorney's fees. The levy was based on an IRS assessment of taxpayer's 1981 tax liability in the amount of $13,975.59. On April 22, 1983, a notice of levy was issued to taxpayer's employer (Sun Refining and Marketing Co.) by defendant-appellee Norrell C. Smith, a revenue agent. The IRS had assessed the tax liability and levied on taxpayer's wages, however, before issuing a notice of deficiency to the taxpayer contrary to I.R.C. Sec. 6213(a).
 
 
 2
 After filing this action, taxpayer received a letter from an Assistant United States Attorney admitting that the wage levy was issued "due to an internal administrative error." On August 24, 1983, the government released the levy. The original tax assessment was abated on September 22, 1983. The amount collected pursuant to the levy with interest was returned to taxpayer and received by him on October 7, 1983. In the meantime, the IRS had issued a statutory notice of deficiency to taxpayer for the 1981 tax year in accordance with I.R.C. Sec. 6213(a).
 
 
 3
 On March 20, 1984, taxpayer filed an amended complaint incorporating various constitutional and tort theories for recovery. He also sought general, special and exemplary damages as well as injunctive relief from government tax collection activities. That same day, the district court entered a scheduling order with a discovery cutoff date of April 23, 1984. On April 3, 1984, the government defendants moved for dismissal or for summary judgment. While that motion was pending and a day after the discovery cutoff date, taxpayer sought to extend the time for discovery. This request was granted and discovery was extended until May 29, 1984. Thereafter, the private defendant, Sun Refining and Marketing Co., moved for summary judgment.
 
 
 4
 The trial court granted both motions for summary judgment. Upon taxpayer's motion for reconsideration, the district court on January 2, 1985, determined that there remained a material issue of fact as to whether government defendant Norrell C. Smith knew or should have known that his action of issuing the levy violated taxpayer's right to receive a notice of deficiency prior to assessment or collection. See Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 2736-39, 73 L.Ed.2d 396 (1982) (qualified immunity defense for government officials performing discretionary government functions ordinarily not available where law governing public official's conduct is clearly established). The summary judgment was vacated insofar as defendant Norrell C. Smith, and the discovery deadline was extended for the second time until January 25, 1985. Trial was set for February 18, 1985. On February 1, 1985, taxpayer moved for an extension of time in which to complete discovery and name witnesses, citing the need to depose two additional witnesses. The government defendants moved to dismiss based on taxpayer's failure to submit a timely pretrial order. The trial court denied both motions and set February 15, 1985, as the deadline for filing the pretrial order and exchanging exhibits.
 
 
 5
 On February 14, 1985, taxpayer moved for a continuance of the trial, discovery and submission of pretrial documents. The next day the government filed a second motion to dismiss based on taxpayer's failure to file the pretrial order or exchange exhibits in accordance with the court's deadline. The case was called on the civil jury docket on February 19, 1985. At that time, the trial court denied taxpayer's request for a continuance and an expansion of discovery and the government's second motion to dismiss. The parties were directed to file a pretrial order by February 22, 1985, and the case was set for trial on February 26, 1985. On February 26, 1985, the case was called but passed over, partly as an accommodation to taxpayer's co-counsel who had recently entered an appearance in the case. Trial was then set for March 18, 1985, at 9:30 a.m.
 
 
 6
 Meanwhile, an agreed pretrial order was submitted. Taxpayer's co-counsel on March 12, 1987, moved for a continuance, citing a heavy trial schedule and court-ordered discovery in another case.[1] On March 15, 1985, counsel were notified that the case would be tried during the week of March 18 with jury selection on March 18. Prior to the docket call, the trial judge telephoned taxpayer's co-counsel and ascertained that he had no trial conflicts during the week of March 18 but that he was moving during that week. At the call of the docket, taxpayer, represented by lead counsel, moved for a continuance and filed a motion seeking to reopen discovery for 90 days. These requests were denied. The trial judge dismissed the case for failure to prosecute pursuant to Fed.R.Civ.P. 41(b)[2] when lead counsel indicated that taxpayer would not proceed to trial without further discovery.
 
 
 7
 Whether to extend or reopen discovery is committed to the sound discretion of the trial court and its decision will not be overturned on appeal absent abuse of that discretion. United States v. Reliance Insurance Co., 799 F.2d 1382, 1387 (9th Cir.1986); United States v. Schellong, 717 F.2d 329, 336 (7th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). Appellate decisions have identified several relevant factors in reviewing decisions concerning whether discovery should be reopened, including: 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence. Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1213 (3rd Cir.1984); Wilk v. American Medical Association, 719 F.2d 207, 232 (7th Cir.1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984); Geremia v. First National Bank of Boston, 653 F.2d 1, 5-6 (1st Cir.1981).
 
 
 8
 Pursuant to Fed.R.Civ.P. 30(a),[3] the taxpayer could have taken depositions 30 days after service of the summons and complaint on any defendant. The district court docket sheet indicates that defendants were served as early as August 17, 1983, thus depositions could have been taken as early as September 17, 1983. The taxpayer then had just over seven months, until the original discovery deadline of April 23, 1984, in which to complete depositions. On May 16, 1984, an additional 13 days was provided for discovery. On January 2, 1985, an additional 13 days was provided for discovery. Taxpayer had eight months in which to take depositions.
 
 
 9
 Taxpayer sought extensions of discovery immediately prior to scheduled trial settings and on the morning of trial. The government opposed these requests on several grounds. The government suggested that defendant Norrell C. Smith was entitled to a prompt resolution of the matter. The government also suggested that the two named witnesses taxpayer sought to depose at the eleventh hour were not relevant to the narrow issue to be tried.[4] The trial court so concluded: "The discovery requested by plaintiff could not reasonably have led to evidence relevant to the sole issue to be decided at trial." Record vol. I at 320-21; 334-35. The trial judge acted well within the range of allowable discretion in denying taxpayer's motions to reopen discovery.
 
 
 10
 As noted, the trial judge dismissed taxpayer's action when, on the morning of trial, lead counsel announced that he had conferred with co-counsel and the taxpayer and that taxpayer's case would not proceed without additional discovery. A dismissal for failure to prosecute is reviewed under an abuse of discretion standard. Link v. Wabash Railroad Co., 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Guidelines have been developed concerning the exercise of this discretion in cases concerning the failure to obey scheduling or pretrial orders as required by Fed.R.Civ.P. 16(f).[5] In re Sanction of Baker, 744 F.2d 1438, 1442 (10th Cir.1984) (en banc), cert. denied, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985).
 
 
 11
 In Link, the Court sustained a Fed.R.Civ.P. 41(b) dismissal for failure to prosecute based on counsel's failure to appear at a pretrial conference. In reaching this result, the Court considered the effect on counsel's client.
 
 
 12
 There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' Smith v. Ayer, 101 U.S. [11 Otto] 320, 326 [25 L.Ed. 955 (1879) ] (footnote omitted).
 
 
 13
 Link, 370 U.S. at 633-34, 82 S.Ct. at 1390-91. The Court also remarked that any rule which considered the client's lack of fault would be to visit the sins of client's counsel on the opposing party. Id. at 634 n. 10, 82 S.Ct. at 1390 n. 10.
 
 
 14
 A recent line of authority suggests that it often will not be possible to treat the client and the lawyer as a unit for sanctioning noncompliance with the court's rules and scheduling orders if it is apparent that the client has not participated in the transgression. Woodmore v. Git-N-Go, 790 F.2d 1497 (10th Cir.1986) (per curiam); D G Shelter Products Co. v. Forest Products Co., 769 F.2d 644 (10th Cir.1985); Hollis v. United States, 744 F.2d 1430 (10th Cir.1984) (citing Jackson v. Washington Monthly Co., 569 F.2d 119 (D.C.Cir.1978)); Baker, 744 F.2d 1438. When imposing sanctions for a party's failure to comply with pretrial deadlines, the trial court is to consider, insofar as practical, where the fault lies for noncompliance. The impact of any sanction should then be directed at the lawyer or the party depending upon who is at fault. Baker, 744 F.2d at 1442.
 
 
 15
 Dismissal is a drastic remedy, one this court has been reluctant to sustain for isolated instances of noncompliance with a lower court's scheduling orders. Woodmore, 790 F.2d 1497; Hollis, 744 F.2d 1430; Davis v. Operation Amigo, Inc., 378 F.2d 101 (10th Cir.1967); Meeker v. Rizley, 324 F.2d 269 (10th Cir.1963); Matheny v. Porter, 158 F.2d 478 (10th Cir.1946). If noncompliance is due to lawyer inadvertence or mistake, the court may take action against the lawyer after considering the inconvenience and expense (to the court system and opposing parties) due to the noncompliance.[6] Baker, 744 F.2d at 1441. There comes a point, however, when the conduct of the lawyer and client can no longer be viewed as discrete, rather the lawyer represents his client and the client is bound by that representation. That point has been reached when the lawyer (or the client) makes a tactical decision and his noncompliance with the court's directive is not a product of inadvertence. That point has been reached in this case.
 
 
 16
 This case had been pending for over a year and a half and had been set for trial on four different occasions. As noted, the trial court acted within its discretion in denying the motion to reopen discovery. The trial court had been asked, and declined, to impose the sanction of dismissal based on taxpayer's noncompliance with the court's pretrial deadlines. See Fed.R.Civ.P. 16(f). When taxpayer declined to go forward at trial due to allegedly inadequate discovery, the trial judge imposed the appropriate sanction, dismissal for failure to prosecute. We need not allocate fault, if any there be, between lawyer and client because both are bound by trial strategy.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Taxpayer's co-counsel claimed that he was required to be available for court-ordered depositions in another tax case during March 25-29, 1985. Record vol. I at 74. The government disputed this and filed affidavits from other attorneys in that case. The affidavits indicated that after a hearing on March 5, 1985, co-counsel voluntarily made himself available for depositions during the week of March 25-28, 1985, and that the other court specifically declined to get involved in scheduling depositions. Although the district court made no findings on this issue, if the facts recited in the affidavits are complete and correct, Fed.R.Civ.P. 11 is surely implicated
 
 
 [2]
 Rule 41. Dismissal of Actions
 * * *
 (b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.
 ....
 Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an ajudication on the merits.
 
 
 [3]
 Rule 30. Depositions Upon Oral Examination
 (a) When Depositions May be Taken. After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination. Leave of court, granted with or without notice, must be obtained only if the plaintiff seeks to take a deposition prior to the expiration of 30 days after service of the summons and complaint upon any defendant or service made under Rule 4(e), except that leave is not required (1) if a defendant has served a notice of taking deposition or otherwise sought discovery, or (2) if special notice is given as provided in subdivision (b)(2) of this rule. The attendance of witnesses may be compelled by subpoena as provided in Rule 45. The deposition of a person confined in prison may be taken only by leave of court on such terms as the court provides.
 
 
 [4]
 Taxpayer sought to reopen discovery in order to depose the Assistant U.S. Attorney who informed taxpayer by letter dated September 12, 1983, that the IRS had made an error in levying on his wages prior to the issuance of a notice of deficiency. This letter was attached to taxpayer's amended complaint. No reason appears in the record why this potential witness could not have been deposed during the initial seven-month discovery period. Taxpayer can hardly claim surprise. Taxpayer also sought to depose Debbie Roselli, a payroll accountant at taxpayer's employer, whom defendant Norrell C. Smith spoke to concerning the levy on taxpayer's wages. The government asserts that Ms. Roselli's identity became known to taxpayer in May 1984, by way of the deposition testimony of Norrell C. Smith. Taxpayer did not explain how the deposition of Ms. Roselli might lead to relevant evidence and there is no explanation of why she could not have been deposed during the last extension of discovery
 Taxpayer also claimed that information learned during the last extension warranted reopening discovery. Taxpayer's 1981 tax return was filed in September 1982, and reported no tax liability. Apparently, IRS Service Center personnel altered the return by writing in an amount for taxes based on the W-2 form attached to the return. Taxpayer was sent one or more collection notices; the levy without benefit of a notice of deficiency followed. Taxpayer claims that the deposition of revenue agent Angela Savinelli of the Austin Service Center justified reopening discovery because "plaintiff was uncertain as to whether Norrell C. Smith was a proper Defendant or whether other parties should have been joined." Brief for Appellant at 6. We have reviewed the portions of Agent Savinelli's deposition testimony offered to the trial court in support of this contention. Record vol. I at 313-14. It provides not a clue as to which or what service center personnel might be responsible for this irregular procedure. Taxpayer's contention is an example of too little, too late. Taxpayer should have diligently pursued discovery during the initial phases of the case. Moreover, the time for discovery on any one issue is not infinite.
 
 
 [5]
 Rule 16. Pretrial Conferences; Scheduling; Management
 ....
 (f) Sanctions. If a party or a party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or a party's attorney fails to participate in good faith, the judge upon motion or his own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing him or both to pay the reasonable expenses incurred because of noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.
 
 
 [6]
 When noncompliance is attibutable to the client, a lawyer may be understandably reluctant to express this to the court given the obligations of confidentiality and loyalty which accompany representation. See Okla.Stat.Ann. tit. 5, c. 1, app. 3 (West 1984) (Code of Professional Responsibility including Canon 4 (duty to preserve confidences and secrets of a client) and Canon 5 (duty to exercise independent professional judgment on behalf of a client)). When there is a material factual dispute between lawyer and client concerning which is responsible for noncompliance, it may be necessary for the lawyer to reconsider continued representation. See Okla.Stat.Ann. tit. 5, c. 1, app. 3, DR 5-101(A) (West 1984)