917 F.2d 1507
 RICO Bus.Disp.Guide 7607
 SIL-FLO, INCORPORATED, a Delaware corporation,
Plaintiff-Appellant and Cross-Appellee,
John J. Ceparano, Plaintiff and Cross-Appellee,
v.
SFHC, INCORPORATED and Paul Doughty, Defendants-Appellees
and Cross-Appellants,
Harold Doughty, Almer E. Ellison, and Rod Fancher,
Defendants and Cross-Appellants.
NORD SIL-FLO, INC., Plaintiff-Appellant,
v.
NOBLE MATERIALS, INCORPORATED, Riley Jo McCarty, Paul
Doughty, and J.R. Fancher, Defendants-Appellees.
 Nos. 88-2455, 88-2456, 88-2475, 88-2492 and No. 89-6017.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 30, 1990.
 
 1
 John A. Claro of Claro & Johnson, Oklahoma City, Okl. and Ronald J. Offenkrantz of Spitzer & Offenkrantz, New York City (Sarah C. Spencer, of Claro & Johnson, on the brief), for plaintiffs-appellants and cross-appellees Sil-Flo, Inc., Nord Sil-Flo, Inc., and John J. Ceparano.
 
 
 2
 Phil Olsen, Altus, Oklahoma and Michael Paul Rogalin, Oklahoma City, Okl., for defendants-appellees and cross-appellants SFHC, Inc. and Paul Doughty.
 
 
 3
 Paul Tobin, Oklahoma City, for appellee and cross-appellant Rod Fancher, cross-appellants Harold Doughty and Almer E. Ellison, and appellees Noble Materials, Inc. and Riley Jo McCarty.
 
 
 4
 BALDOCK, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and KANE, Senior District Judge*.
 
 
 5
 KANE, Senior District Judge.
 
 
 6
 These related appeals arise out of two actions filed in the District Court for the Western District of Oklahoma. In the first action (hereinafter referred to as "Sil-Flo I"), Sil-Flo, Inc., a Delaware corporation engaged in the production of perlite products, and its owner, John Ceparano, brought suit against SFHC, Inc. and its ownership for breach of contract, trade secret violations and corporate mismanagement. In the second action (hereinafter referred to as "Sil-Flo II"), Nord Sil-Flo, Inc., the successor to Sil-Flo, Inc., sued Noble Materials and other parties for breach of fiduciary duty, misappropriation of trade secrets and civil conspiracy. Sil-Flo, Inc. and the defendants in Sil-Flo I now appeal various rulings in that case. In addition, Nord Sil-Flo, Inc. appeals the dismissal of the Sil-Flo II case on the grounds of res judicata and collateral estoppel. We affirm.
 
 
 7
 I. Background.
 
 
 8
 On February 18, 1989, John J. Ceparano, the sole shareholder and owner of Sil-Flo, Inc., agreed to sell the corporation to SFHC, Inc., a holding company formed for this purpose. The purchase agreement provided that Ceparano would transfer all of the stock in the corporation to SFHC in exchange for consideration valued at $1,792,000. The consideration consisted of $300,000 in cash and interests in real property, the extinguishment of a $92,000 debt Ceparano owed to Sil-Flo, Inc. and SFHC's execution of a two-year promissory note to Ceparano for $1,400,000. The Sil-Flo, Inc. stock was to be held in escrow pending SFHC's payment of the consideration and fulfillment of other obligations under the purchase agreement. The purchase agreement also provided that, after SFHC acquired Sil-Flo, Inc., it would release Ceparano from further liability on certain listed obligations within two years, operate the corporation in the ordinary course of business, keep current Sil-Flo, Inc.'s obligations to third parties, and not transfer the corporation's assets or stock without Ceparano's written consent. The agreement was to be construed in accordance with New York law.
 
 
 9
 In a letter dated June 10, 1985, Ceparano wrote Paul Doughty, president of SFHC, informing him that SFHC was in default of its obligations under the purchase agreement and promissory note. Ceparano requested that SFHC relinquish its interest in Sil-Flo, Inc. and rescind the purchase agreement by executing the bottom of the letter. Doughty signed the letter, and control of the corporation was returned to Ceparano. Thereafter, Ceparano began negotiations with various third parties to attempt to sell the corporation. In September 1986, Ceparano sold the corporation to Nord Resources.
 
 
 10
 On September 16, 1985, after rescission of the purchase agreement, Ceparano and Sil-Flo, Inc. commenced the Sil-Flo I action in the Western District of Oklahoma. The complaint set forth six claims for relief. In the first claim, Sil-Flo, Inc. alleged that defendants Rod Fancher, Almer Ellison, and Paul and Harold Doughty (principals of SFHC) had conspired to remove certain perlite processing equipment from Sil-Flo, Inc.'s corporate headquarters. The company requested replevin of the equipment and an injunction against the use or disclosure of proprietary information concerning the operation of the equipment. In the second claim, Ceparano sought injunctive relief against the above defendants and Dan Love to restrain them from intentionally interfering with Sil-Flo, Inc.'s business relations. In the third claim, both Sil-Flo, Inc. and Ceparano requested an accounting of Sil-Flo, Inc.'s assets, damages and other relief relating to the defendants' alleged fraudulent transactions. The fourth cause of action was for damages to Sil-Flo, Inc. for the defendants' intentional interference with business relations. The fifth claim, brought by Ceparano, was for damages against each defendant for breach of contract, investment fraud and breach of fiduciary duty. Finally, in the sixth claim, Sil-Flo, Inc. and Ceparano alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1962.
 
 
 11
 After answering the complaint, the defendants moved to dismiss the intentional interference with business relations and RICO claims. The court denied the motion to dismiss the intentional interference claim; however, it dismissed the RICO claim because the plaintiffs failed to plead adequately a pattern of racketeering activity, after having amended the complaint and supplemented it with a RICO case statement.
 
 
 12
 On December 23, 1986, the defendants in Sil-Flo I moved for leave to file a compulsory counterclaim against Sil-Flo, Inc. for monies loaned. They asserted that they were unable to file the counterclaim before the September 15, 1986 scheduling order deadline because they had not discovered the facts underlying the counterclaim and because Ceparano had sold Sil-Flo, Inc. to Nord Resources. On April 27, 1987, the court denied this motion. It found that, since the defendants had filed an analogous counterclaim in state court in July 1986,[1] they were aware of the facts relevant to the counterclaim before the filing deadline. It saw no connection between Ceparano's sale of the corporation and the defendants' delay in filing the counterclaim. The court later reaffirmed its ruling on the defendants' motion for reconsideration.
 
 
 13
 On August 18, 1987, the plaintiffs moved to reopen discovery on a limited basis so they could question several defendants about the transfer of the perlite processing machinery to Noble Materials. They alleged that further discovery was necessary because "the issue surrounding Noble Materials' use of Sil-Flo, Inc.'s proprietary process arose suddenly during the days immediately preceding the discovery cutoff date in the case at bar" and they were unable to employ an expert to investigate the technical aspects of this issue. R.Supp.Vol. XXI, Doc. 229 at 1. The court denied this motion, and the case proceeded to trial.
 
 
 14
 The jury rendered its verdict on March 6, 1988. It found in favor of Ceparano on his claims against SFHC for breach of contract and breach of the implied covenant of good faith and fair dealing, and against defendants Paul Doughty and Fancher for tortious interference with contract. It likewise held for Sil-Flo, Inc. on its claim against defendants Paul Doughty and Fancher for breach of fiduciary duty. The jury ruled in favor of defendants Harold Doughty, Almer Ellison and Dan Love on the claims against them. On August 17, 1988, the court denied defendant Fancher's motion for judgment notwithstanding the verdict or for new trial.
 
 
 15
 While the Sil-Flo I action was pending, the Nord Sil-Flo Corporation ("Nord"), the successor to Sil-Flo, Inc., commenced the Sil-Flo II action in federal district court for the Northern District of Texas. Nord named as defendants Noble Materials, Inc., Riley Jo McCarty, Rod Fancher and Paul Doughty. Nord alleged claims of breach of fiduciary duty, misappropriation and civil conspiracy arising out of many of the same events alleged in Sil-Flo I. The defendants moved to transfer the case to the Western District of Oklahoma, where the Sil-Flo I case was being heard. The motion to transfer was granted and all discovery deadlines were stayed pending further direction from the district court for the Western District of Oklahoma. On December 16, 1988, that district court granted the defendants' motion to dismiss the Sil-Flo II case on the grounds of res judicata and collateral estoppel.
 
 
 16
 The parties to the Sil-Flo I and Sil-Flo II cases now appeal. In Appeal No. 88-2455, Sil-Flo, Inc. contests the district court's rulings on choice of law, jury instructions, the exclusion of evidence, the reopening of discovery and the dismissal of its racketeering claim in Sil-Flo I. In Cross-Appeal Nos. 88-2456, 88-2475, and 88-2492, the defendants challenge the court's admission of expert testimony, its dismissal of a counterclaim, and its decision not to grant judgment n.o.v. or a new trial in Sil-Flo I. Finally, in Appeal No. 89-6017, Nord appeals the district court's dismissal of Sil-Flo II on the grounds of res judicata and collateral estoppel. We discuss these issues below.
 
 
 17
 II. Appeal No. 88-2544.
 
 
 18
 A. Choice of Law.
 
 
 19
 Sil-Flo, Inc.'s first contention in this appeal is that the district court erred in applying Oklahoma, and not Texas, trade secret law in Sil-Flo I. "We review choice of law determinations de novo. Any findings of fact underlying such determinations are reviewed under the clearly erroneous standard." Mitchell v. State Farm Fire & Casualty Co., 902 F.2d 790, 792 (10th Cir.1990) (citations omitted).
 
 
 20
 It is undisputed that, in considering a choice of law question, a federal court must apply the substantive law of the state in which it sits. Black v. Cabot Petroleum Corp., 877 F.2d 822, 823 (10th Cir.1989). Accordingly, the district court applied Oklahoma choice of law principles to this case. Oklahoma law adopts the "most significant relationship" test. See Brickner v. Gooden, 525 P.2d 632 (Okla.1974). Under this test, the district court must consider the following general principles in deciding which state's law is applicable to a particular issue:
 
 
 21
 "(a) the needs of the interstate and international systems,
 
 
 22
 (b) the relevant policies of the forum,
 
 
 23
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 
 
 24
 (d) the protection of justified expectations,
 
 
 25
 (e) the basic policies underlying the particular field of law,
 
 
 26
 (f) certainty, predictability and uniformity of result, and
 
 
 27
 (g) ease in the determination and application of the law to be applied."
 
 
 28
 Mitchell, 902 F.2d at 793 (citing Restatement (Second) of Conflicts of Law Sec. 6 (1971)). The contacts to be taken into account in considering the above principles include " '(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.' " Brickner v. Gooden, 525 P.2d at 635 (citing Restatement (Second) of Conflicts of Law Sec. 145 (1968)).
 
 
 29
 In applying these guidelines to the facts of the Sil-Flo I case, Sil-Flo, Inc. carefully enumerates the ways in which this case is connected with the state of Texas. Certainly, as Sil-Flo, Inc. points out, there were activities that took place in Texas, particularly at the corporation's Texas plant. However, looking at the entirety of events, there are at least an equal number, if not more, contacts with the state of Oklahoma. The corporation maintained an office in Norman, Oklahoma, and much of the defendant's allegedly wrongful activities took place there. All of the defendants are Oklahoma residents, and SFHC is an Oklahoma corporation. There were also contacts to other states, particularly Arizona, where the corporation had a mine, and New York, where plaintiff Ceparano was a resident. The purchase agreement between Sil-Flo, Inc. and SFHC further provided that it was to be interpreted under New York law.
 
 
 30
 We agree with the district court that the state of Oklahoma had the most significant contacts to this case. The court based this conclusion on its findings that (1) the plaintiffs chose an Oklahoma forum for their lawsuit, (2) one of the central defendants in the case, Rod Fancher, worked from an Oklahoma office, (3) many of the significant events took place in either Arizona or Oklahoma, and (4) the plaintiffs concurred in the application of Oklahoma law to other claims in this action. These findings are supported by substantial evidence and are not clearly erroneous. Accordingly, we conclude that the district court did not err in applying Oklahoma trade secret law in Sil-Flo I.
 
 
 31
 B. Jury Instructions.
 
 
 32
 Sil-Flo, Inc.'s second argument in this appeal is the district court erred in not giving the jury an aiding and abetting and a conspiracy instruction with respect to defendants Harold Doughty and Almer Ellison. In order to preserve a claim that the trial court improperly gave or failed to give an instruction to the jury, the appellant must have objected to the contested instruction before the jury is sent to deliberate. Fed.R.Civ.P. 51. Further, Tenth Circuit local rule 28.2(e) requires that, "[w]henever an appeal is based upon ... the giving or refusal to give a particular jury instruction, ... the party shall state where in the record a proper objection was made to the ruling and whether the objection is recorded and ruled upon." 10th Cir.R. 28.2(e).
 
 
 33
 Sil-Flo, Inc. does not state in its brief whether the proper objection was made to preserve for appeal its argument that the court erred in not giving an aiding and abetting and a conspiracy instruction. Our review of the record reveals that the parties were given the opportunity to object to the instructions after they were read to the jury, but that counsel for Sil-Flo, Inc. did not register any relevant objection to the omission of either instruction. Counsel for Sil-Flo, Inc. did bring to the court's attention the fact that reference to the civil conspiracy claim appeared in the title of Instruction 18-B, but appeared to concur in the operative language of the instruction. The erroneous reference to conspiracy in the title was corrected before written instructions were presented to the jury. See R.Supp.Vol XVIX at 124-25, 129. We do not interpret counsel's comments on this score an objection to the lack of a conspiracy instruction.[2] Therefore, absent a proper objection, we review the district court's ruling for plain error only. Palmer v. Krueger, 897 F.2d 1529, 1532-33 (10th Cir.1990); Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1274 (10th Cir.1988).
 
 
 34
 "A party is entitled to an instruction based on their [sic] theory of the case only if (1) the instruction is legally correct; (2) the theory is supported by the evidence; and (3) the desired instruction is brought to the court's attention in a timely manner." Midamerica Fed. Sav. & Loan Ass'n v. Shearson/American Express Inc., 886 F.2d 1249, 1261 (10th Cir.1989). Here, the district court struck the plaintiffs' proposed conspiracy instructions, stating:
 
 
 35
 The Court finds that there is inadequate notice to the defendants [of the conspiracy claim] in this case. There was no conspiracy instruction submitted by the plaintiffs. In accordance with this Court's order requiring proposed instructions, there was no conspiracy theory advanced in the trial brief. There was [sic] no conspiracy instructions offered by the plaintiffs in their supplemental instructions. There was no conspiracy theory set forth in the stipulation of uncontested facts. There was no mention of the conspiracy theory in the opening statement.
 
 
 36
 The Court does believe and agrees with defendants and finds as a matter of law that it was an afterthought. And even if it wasn't an afterthought, it was not properly noticed to the defendants to give them an opportunity to adequately prepare the case. And as a result--I believe it's under Rule 15(b) of the Federal Rules of Civil Procedure--the Court finds that this has not been adopted as part of the litigation by opposing counsel and that it would not be in the best interest of justice to permit that claim to proceed to the jury.
 
 
 37
 R.Supp.Vol. VII at 20. The court refused to give the aiding and abetting instruction for similar reasons. See id. Vol. XVIX at 5, 45-46.
 
 
 38
 Sil-Flo, Inc. argues that the court's ruling was in error because it disclosed its secondary liability theory in the October 19, 1987 pretrial order. While there are two passing references to conspiracy and aiding and abetting in the pretrial order, no coherent claim of secondary liability was advanced. Even assuming that language in the pretrial order gave the defendants fair notice of the claims, evidence at trial must support these theories before a jury instruction is proper. Although Sil-Flo, Inc. claims that "the trial transcript reveals an abundance of evidence supporting a conspiracy theory," Brief in Chief of Appellant, Sil-Flo, Inc. at 30, it provides no citations to the record where this evidence can be found. We need not "sift through" the record to find this evidence, see United States v. Downen, 496 F.2d 314, 319 (10th Cir.), cert. denied, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974); Holt v. Sarver, 442 F.2d 304, 307 (8th Cir.1971), nor manufacture a party's argument for him, see United States v. Swingler, 758 F.2d 477, 493 (10th Cir.1985) (defendant adopted by reference argument of co-defendant without citation to record with respect to evidence relating to his conviction). The trial in Sil-Flo I lasted fifteen days and generated over twenty volumes of transcript in this case, several of which exceed 200 pages. In these circumstances, it is imperative that the appellant provide specific references to the relevant passages to carry its burden of showing error. See Fed.R.App.P. 28(a); Moore v. Subaru of Am., 891 F.2d 1445, 1448 (10th Cir.1989); Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1548 (9th Cir.1988); Rebuck v. Vogel, 713 F.2d 484, 487 (8th Cir.1983); United States v. Partin, 552 F.2d 621, 633 n. 14 (5th Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); 9 Moore's Federal Practice p 228.02 at 28-11 (1990). Absent such references, we defer to the trial court's ruling on these instructions. See Moore v. Subaru of Am., 891 F.2d at 1448. Accordingly, we conclude that the district court did not commit plain error by failing to give the contested instructions because of inadequate notice of the secondary liability claims and lack of evidence to support them.
 
 
 39
 C. Reopening of Discovery.
 
 
 40
 Sil-Flo, Inc. next contests the district court's decision to deny its motion to reopen discovery. In moving to reopen, the plaintiffs claimed that they had only recently learned of Noble Resource's use of Sil-Flo, Inc.'s proprietary processes and that they required additional time for discovery to investigate and formulate an additional claim for improper use of proprietary information. The district court denied the motion to reopen discovery in a minute order.
 
 
 41
 In considering this issue, we note that the district court has wide discretion in its regulation of pretrial matters. Doelle v. Mountain States Tel. & Tel., 872 F.2d 942, 947 (10th Cir.1989). We review the court's decision precluding the reopening of discovery for an abuse of discretion. Id.; Smith v. United States, 834 F.2d 166, 169 (10th Cir.1987). Under this standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).
 
 
 42
 We have identified previously several relevant factors in reviewing decisions concerning whether discovery should be reopened. These include:
 
 
 43
 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.
 
 
 44
 Smith, 834 F.2d at 169. In this case, the discovery deadline had been extended several times, over the defendant's objections, to accommodate the plaintiffs. The record suggests that the plaintiffs did not make diligent use of the long period the court originally provided for discovery, and the matters they sought to investigate further (relating to the improper use of a trade secret) primarily involved entities which were not parties to the lawsuit. Consequently, we conclude that the district court did not abuse its discretion in denying the plaintiffs' motion to reopen discovery.
 
 
 45
 D. Evidentiary Rulings.
 
 
 46
 In its fourth argument on appeal, Sil-Flo, Inc. advances three objections to the district court's evidentiary rulings in Sil-Flo I. First, the corporation contends that the court erroneously prevented several witnesses from testifying about state court litigation, referred to in the record as the "Commerce Bank litigation," in which Sil-Flo, Inc. had accused some of the same defendants of breaching their fiduciary duties to the corporation. Second, Sil-Flo, Inc. argues that the court improperly excluded trial exhibits prepared by expert witness Neill Freeman going to the issue of damages. Third, the company asserts that the court should not have prevented Mr. Freeman from testifying on rebuttal. We review the trial court's rulings limiting the scope of the evidence for an abuse of discretion. See Messina v. Kroblin Transp. Sys., Inc., 903 F.2d 1306, 1310 (10th Cir.1990).
 
 
 47
 With respect to the court's restrictions on testimony about the Commerce Bank litigation, we can discern no way in which Sil-Flo, Inc.'s position was prejudiced by the rulings from which it complains. Before trial, the defendants filed a motion in limine to prevent reference to this litigation. At a hearing in the matter, counsel for Sil-Flo, Inc. voluntarily agreed to limit his presentation to the acts underlying the litigation without addressing the litigation itself or its outcome. Counsel for the defendants prepared an order reflecting this agreement. At trial, a dispute over evidence relating to this litigation arose in two instances. In the first instance, the trial court essentially denied counsel for the defendants' objection to the evidence Sil-Flo, Inc. sought to introduce. See R.Supp.Vol. IX at 193-202. In the second instance, when counsel for Sil-Flo, Inc. later appeared to be referencing matters outside limits of this order, both attorneys were asked to approach the bench. At that time, counsel for Sil-Flo, Inc. voluntarily agreed to abandon his line of questioning and to stay within the confines of the court's order. Id. Vol. XVI at 1940-46.
 
 
 48
 As we discussed in connection with Sil-Flo, Inc.'s argument on jury instructions, federal and local rules of appellate procedure require the appellant to identify, by specific reference to the record, "the pages ... at which the evidence was identified, offered, and received or rejected." Fed.R.App.P. 28(e); see also 10th Cir.R. 28.2(e). Since counsel for Sil-Flo, Inc. either voluntarily agreed to the limitations on the evidence or the court ruled in favor of Sil-Flo, Inc. on opposing counsel's objection, we have difficulty construing the passages cited by Sil-Flo, Inc. as an objection to the court's limitation on mention of the Commerce Bank litigation. Even assuming that counsel's discourse at the bench could be so interpreted, the court's initial decision to limit direct reference to the state court litigation on the grounds of relevance and undue prejudice was well within the confines of Fed.R.Evid. 403, and its subsequent rulings were consistent with that order. There has been no abuse of discretion.
 
 
 49
 Sil-Flo, Inc.'s next evidentiary objection concerns the preclusion of certain exhibits prepared by expert witness Freeman calculating the plaintiffs' damages. The district court sustained the defendants' objection to these exhibits because they were not timely submitted to opposing counsel before the pretrial conference. Sil-Flo, Inc. argues that preliminary versions of these exhibits were made available to opposing counsel, but that final versions could not be prepared because the defendants' had improperly kept the corporation's books and because of mathematical errors that needed correction. The record reveals, however, that the district court did not preclude Mr. Freeman from testifying at trial and giving opinions on the issue of damages based on the information which would have been contained in these exhibits. Thus, Sil-Flo, Inc. was not substantially prejudiced by the exclusion of the Freeman exhibits, and the court acted well within its discretion in preventing their introduction at trial due to untimeliness.
 
 
 50
 Sil-Flo, Inc.'s final evidentiary objection is that the court should not have excluded Mr. Freeman's rebuttal testimony on the issue of damages. The court's decision not to permit rebuttal testimony can be reversed only for an abuse of discretion. Marsee v. United States Tobacco Co., 866 F.2d 319, 324 (10th Cir.1989). We have reviewed the record in this regard and we agree with the district court's assessment that Freeman's proffered rebuttal testimony was really an attempt by Sil-Flo, Inc. to introduce or interpret exhibits more properly part of its case-in-chief and that Mr. Freeman was not the proper party to sponsor or interpret such exhibits. Consequently, the testimony was properly excluded.E. Dismissal of RICO Claim.
 
 
 51
 Sil-Flo, Inc.'s final argument in this appeal is that the district court erred in granting the defendants' pretrial motion for summary judgment on its RICO claim. The court dismissed this claim after it permitted the plaintiffs to amend their complaint and to file a RICO case statement, finding that it
 
 
 52
 consist[ed] of allegations which, when construed in a light most favorable to the Plaintiffs, set forth a series of acts which do not constitute a pattern of racketeering activity as is required by the RICO Act. The allegations amount, basically, to a very limited course of conduct. The conduct is limited both with respect to continuity over time and with respect to the extent the world outside the alleged enterprise was affected. The Plaintiffs describe a single scam affecting a single mark, that is, Mr. Ceparano. What occurred with that single scam cannot be subdivided into separate acts for the purpose of setting up a RICO claim.
 
 
 53
 R.Vol. I, Doc. 138 at 2. Sil-Flo, Inc. now argues that the defendants' conduct "involved a web of patterns, victims and criminal acts," Brief in Chief of Appellant, Sil-Flo, Inc. at 54, and that it had clearly pled a pattern of racketeering activity.
 
 
 54
 Since the district court's ruling on the defendants' motion for summary judgment in Sil-Flo I, the Supreme Court has further defined what conduct constitutes a pattern of racketeering activity. See H.J. Inc. v. Northwestern Bell Tel. Co., --- U.S. ----, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In that case, the Court held that a RICO violation does not necessarily require more than one scheme, although conduct involving multiple schemes will likely be more probative. Id. at 2901; see also Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1273 (10th Cir.1989). Instead, the Court focused on two requirements: continuity and relationship. H.J. Inc., 109 S.Ct. at 2900. "[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id.
 
 
 55
 Here, there is little question that the acts complained of in this case are related because they are all part of the same common scheme. See Phelps, 886 F.2d at 1273. The question instead is whether the plaintiffs have alleged facts showing sufficient continuity to sustain their RICO claim.
 
 
 56
 To establish continuity, the plaintiff must demonstrate either "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc. v. Northwestern Bell Telephone Co., 109 S.Ct. at 2902. These two forms of continuity are respectively referred to as closed-ended and open-ended continuity. Id. The Supreme Court held that closed-ended continuity requires "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months" are insufficient. Id. Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct. Id.
 
 
 57
 Id. at 1273. The district court found that such continuity did not exist and, after reviewing the factual allegations in this case, we agree.
 
 
 58
 At most, what has been alleged is a business deal gone sour, accompanied by the breach of fiduciary duty and various other torts by the defendants. There certainly is no open-ended threat of future illegal activity. While the plaintiffs may have alleged a closed-ended series of predicate acts, they constituted a single scheme to accomplish "one discrete goal," directed at one individual with no potential to extend to other persons or entities. See Id. at 1273-74. While a single scheme may suffice in some instances, here there is simply no indication of a threat of continuing illegal activity. In enacting the RICO statute, "Congress was concerned in RICO with long-term criminal conduct." H.J. Inc., 109 S.Ct. at 2902. The objectives of this statute would not be served by recognizing a RICO claim in this instance. We affirm the district court's dismissal of Sil-Flo, Inc.'s RICO claim.III. Cross-Appeal Nos. 88-2456, 88-2475 & 88-2492.
 
 
 59
 A. Expert Testimony.
 
 
 60
 The defendants first contention in these cross-appeals is that the district court improperly denied their motion in limine objecting to the expert testimony of Neill Freeman. Their objection was based on the problems the defendants encountered in deposing Mr. Freeman to learn the underlying factual basis for the opinions he intended to offer at trial. They argue that, during his deposition, Freeman did not identify what opinions he intended to offer, much less the factual basis for his testimony, and that this violated the court's earlier bench ruling requiring Mr. Freeman to do so.
 
 
 61
 We review the district court's ruling admitting Mr. Freeman's expert testimony under the abuse of discretion standard. Specht v. Jensen, 853 F.2d 805, 810 (10th Cir.1988), cert. denied, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989). The court's ruling cannot be overturned unless it is " 'manifestly erroneous.' " Id. (citing Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962)). Accordingly, "we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value." United States v. Ortiz, 804 F.2d at 1164 n. 2.
 
 
 62
 "Because of the Federal Rules' emphasis on liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations."
 
 
 63
 Specht, 853 F.2d at 810-11 (citations omitted).
 
 
 64
 We cannot determine whether the alleged problems with Mr. Freeman's deposition were in violation of the court's earlier bench ruling on this issue because the parties have provided no record of that ruling. The defendants state in their brief that there was no reporter present at the time and no transcript of its ruling exists. In this situation, the Federal Rules of Appellate Procedure provide that the appellant may submit
 
 
 65
 a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.
 
 
 66
 Fed.R.App.P. 10(c). The defendants have not submitted such a statement here. Although this procedure is not mandatory, without a record of the proceedings below we have no option but to defer to the district court's ruling during trial that Mr. Freeman's deposition did not violate its earlier order. See R.Supp.Vol. XIII at 1347.
 
 
 67
 We likewise conclude that the district court did not abuse its discretion in admitting Mr. Freeman's expert testimony, despite the defendants' objection that they were denied adequate discovery of the basis for Mr. Freeman's expert testimony. The court below rejected the defendants' argument that they did not have adequate notice of the opinions to be offered during Freeman's testimony, finding that the opinions were disclosed in earlier filings and in Freeman's deposition. As to the deficiencies in the data underlying Freeman's opinions, the court also found:
 
 
 68
 pursuant to Rule 703 that not all of the underlying facts need be admissible in evidence and, pursuant to Rule 705, the defense may inquire on cross-examination as to the basis or underlying facts or data of these opinions.
 
 
 69
 In the Court's view, the defense has made a number of excellent points going to the weight of the evidence associated with this particular expert. All of those points can be brought out on cross-examination. But in the Court's view, it goes to the weight and not the admissibility of this witness's testimony.
 
 
 70
 Id. at 1347-48. We concur in the court's reasoning. While we acknowledge that pretrial discovery of an expert witness is essential for effective cross-examination, see Smith v. Ford Motor Co., 626 F.2d 784, 794 (10th Cir.1980), cert. denied, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981), the defendants were permitted to depose Mr. Freeman. That his responses during the deposition may have revealed inadequate preparation or reliance on questionable data was a matter to be brought out in cross-examination; the record reflects, in fact, that counsel for one of defendants did just that. We uphold the trial court's admission of Mr. Freeman's expert testimony.
 
 
 71
 B. Dismissal of Counterclaim.
 
 
 72
 The defendants' second argument in these cross-appeals is that the trial court abused its discretion in denying the defendants' motion to file a compulsory counterclaim against Sil-Flo, Inc. for monies loaned. The defendants made this motion more than three months after expiration of the deadline set forth in the scheduling order for the amendment of pleadings. They argue that the court should not have denied their motion because the failure to file timely the counterclaim was the fault of their counsel and that they should not be penalized for this mistake.
 
 
 73
 The Federal Rules of Civil Procedure generally require entry of a scheduling order covering time limits for the completion of major events during the course of a civil action. See Fed.R.Civ.P. 16(b). Scheduling orders are not to be modified by the trial court except when authorized by local rule upon a showing of good cause. Fed.R.Civ.P. 16(f). The rules further empower the court to make such orders "as are just" to sanction a party or a party's attorney who fails to obey a scheduling or pretrial order. Sanctions may include the entry of "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Fed.R.Civ.P. 37(b)(2)(C).
 
 
 74
 In addition to rules governing scheduling and pretrial orders, the Federal Rules of Civil Procedure address the filing of compulsory and permissive counterclaims and cross-claims. Rule 13(f) states that, "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). We review the district court's rulings under rules 13(f) and 16(f) for an abuse of discretion. See G.J.B. & Assocs., Inc. v. Singleton, 913 F.2d 824, 825 (10th Cir.1990) (Rule 16(f)); Federal Deposit Ins. Corp. v. Staudinger, 797 F.2d 908, 911 (10th Cir.1986) (Rule 13(f)).
 
 
 75
 In denying the defendants' motion to amend their answer to assert a counterclaim, the court below stated:
 
 
 76
 Defendants assert two reasons why the Court should permit the filing of the counterclaims out of time: first, that defendants did not have knowledge of the facts necessary for the filing of the counterclaims until December, 1986 and second, that plaintiff Ceparano's sale of his interest in Sil-Flo in September, 1986 constituted grounds for a new cause of action.
 
 
 77
 The Court finds these reasons unpersuasive. In July, 1986 defendant SFHC, Inc. filed a counterclaim in state court that contains many of the allegations and claims that make up defendants' proposed counterclaims in this action. The filing of the state court counterclaims in July, two months before the deadline in this case, leads the court to the conclusion that sufficient facts were known to accomplish a similar filing here and that a tactical decision was made not to do so. The brief in support of defendants' motion for the proposed counterclaims does not provide the Court with a basis for determining that the sale of Mr. Ceparano's interest in Sil-Flo, Incorporated in September, 1986 was an event that "created" the proposed counterclaims or was the final event necessary for the maturation of the counterclaims.
 
 
 78
 R.Vol. I, Doc. 144. We agree with the district court's characterization that, based on the inconsistent statements in the defendants' motions, their failure to file the counterclaim was a tactical decision and not simply a mistake by counsel as to the need to file within the scheduling order deadline, as later alleged in the motion for reconsideration. While rigid adherence to the pretrial scheduling order is not advisable, see Smith Contracting Corp. v. Trojan Constr. Corp., 192 F.2d 234, 236 (10th Cir.1951), sufficient evidence supports the district court's conclusion that the defendants' failure timely amend was not due to oversight, inadvertence or excusable neglect. We affirm the denial of the defendants' motion for leave to file compulsory counterclaim.
 
 
 79
 C. Judgement N.O.V. or New Trial.
 
 
 80
 The final issue raised in this cross-appeal is whether the district court erred in denying defendant Fancher's motion for judgment notwithstanding the verdict or for a new trial. The jury held Fancher liable on Ceparano's claim for tortious interference with business relations and on Sil-Flo, Inc.'s claim for breach of fiduciary duty. Fancher's argument focuses on the alleged lack of evidence to support a finding that his interference was the proximate cause of SFHC's breach of the purchase agreement and of Ceparano's damages for tortious interference with business relations. He further argues that there was no evidence that he was a fiduciary of Sil-Flo, Inc. or that his actions were the proximate cause of the company's damages for breach of fiduciary duty.
 
 
 81
 Our review of this issue is limited to whether the court's ruling constituted a manifest abuse of discretion. Harvey ex. rel. Harvey v. General Motors Corp., 873 F.2d 1343, 1346 (10th Cir.1989). "So long as a reasonable basis exists for the jury's verdict, we will not disturb the district judge's ruling." McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir.1988). We have reviewed the portions of the record cited by both parties to support their positions on this issue. Our role is not to determine anew whether in our judgment Mr. Fancher should have been held liable on these claims. See Patty Precision Prods. v. Brown & Sharpe Mfg. Co., 846 F.2d 1247, 1251 (10th Cir.1988). We consider only whether the evidence and all reasonable inferences to be drawn therefrom so clearly mandates that Mr. Fancher can not be held liable that reasonable minds could not differ on this result. Ryder v. City of Topeka, 814 F.2d 1412, 1418 (10th Cir.1987). We agree with the district court that the evidence was not so one-sided as to permit this conclusion.
 
 
 82
 First, there was ample evidence that Mr. Fancher was a controlling party of Sil-Flo, Inc. so as to justify fiduciary liability. He participated in the negotiations for SFHC's purchase of Sil-Flo, Inc., and there was testimony that he was to provide financing for this transaction. During SFHC's ownership of the company he exercised substantial decisionmaking and/or management authority. He held a central role in the development of new product lines and in directing the future course of the company's marketing efforts. Testimony also reflected that he had the ability to enter into contracts, terminate consultants and endorse checks on behalf of the corporation. We likewise agree that, given Mr. Fancher's controlling position, there was sufficient evidence to support the inference that, during his tenure with Sil-Flo, Inc., Fancher acted to further his own best interests, or at least not those of the Sil-Flo, Inc. corporation. His comment that Paul Doughty should "dump" Sil-Flo, Inc. back on Mr. Ceparano but keep its technology likewise permits the reasonable inference that Fancher's activities were a proximate cause of SFHC's breach of the purchase agreement and of Mr. Ceparano's damages for that breach. In short, while the evidence did not overwhelmingly establish that Mr. Fancher should be held liable on these claims, there was sufficient evidence to permit the jury to reach its conclusion. Accordingly, the district court did not abuse its discretion in denying Fancher's motion for directed verdict or judgment notwithstanding the verdict.
 
 
 83
 IV. Appeal No. 89-6017.
 
 
 84
 The sole issue in this appeal is whether the district court erred in dismissing the Sil-Flo II case on the grounds of res judicata and collateral estoppel. In granting the defendant's motion to dismiss or for summary judgment, the district court ruled that Nord's action against Fancher and Doughty was barred by res judicata, in that identical claims had been decided in favor of these defendants and against Nord's predecessor in the Sil-Flo I case. The court similarly dismissed the case against defendants Noble and McCarty on the grounds of collateral estoppel, finding that the requirements of that doctrine were met. Nord argues that this ruling was in error because it was denied a full and fair opportunity to litigate the Sil-Flo I case. We review this matter de novo. See May v. Parker-Abbott Transfer & Storage, Inc., 899 F.2d 1007, 1009 (10th Cir.1990); Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir.1988).
 
 
 85
 The doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related.[3] Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Id. Res judicata generally applies where there is an identity of parties and of claims and a final judgment on the merits. See Blonder-Tongue Laboratories, Inc. v. University of Ill. Found., 402 U.S. 313, 323-24, 91 S.Ct. 1434, 1439-40, 28 L.Ed.2d 788 (1971) (elements of res judicata discussed in connection with mutuality doctrine). It bars both claims that were actually litigated and those that were or could have been raised in the first action. Id. To invoke collateral estoppel, however, mutuality of parties is not necessary. Instead, this doctrine requires an identity of issues raised in the successive proceedings and the determination of these issues by a valid final judgment to which such determination was essential. See Annotation, Modern Status of Mutuality of Estoppel Requirement for Application of Doctrine of Collateral Estoppel in Federal Civil Case to Stranger to Prior Judgment, 58 L.Ed. 938, 940 n. 1 (1980). Both doctrines require that the party or parties against whom the earlier decision is asserted had a full and fair opportunity to litigate the claim or issue. Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 n. 22, 102 S.Ct. 1883, 1897 n. 22, 72 L.Ed.2d 262 (1982). In this case, Nord does not dispute that a majority of the requirements for res judicata and collateral estoppel were met. Nord's argument in this appeal centers solely on whether it had a full and fair opportunity to litigate its claims in Sil-Flo I. It contends that it did not have a full and fair opportunity to litigate Sil-Flo I because the district court ruled against it on the choice of law issue.[4] We disagree.
 
 
 86
 First, as we discussed above, the district court correctly applied Oklahoma trade secret law in the Sil-Flo I case. Thus, Nord's underlying contention that wrong trade secret law was applied is without merit. Second, even assuming that the district court erred in applying Oklahoma trade secret law in Sil-Flo I, Nord's predecessor was not denied a full and fair opportunity to litigate that case. The requirement that the party against whom the prior judgment is asserted had a full and fair opportunity to be heard centers on the fundamental fairness of preventing the party from relitigating an issue he has lost in a prior proceeding. See, e.g., Blonder-Tongue, 402 U.S. at 334, 91 S.Ct. at 1445 (1971) (court's decision on whether a party has had a full and fair opportunity to litigate "will necessarily rest on the trial court's sense of justice and equity"). Often, the inquiry will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Sec. 4423 at 216-226 (1981).
 
 
 87
 Contrary to Nord's assertion here, disagreement with the district court's legal ruling in Sil-Flo I on the choice of law issue does not mean that it was denied the full and fair opportunity to litigate. By making this argument, Nord is attempting to achieve through the back door what it cannot do directly: that is, bring a subsequent action challenging a legal ruling in a prior action. The doctrines of res judicata and collateral estoppel apply equally to issues of fact and rulings of law. See La Preferida, Inc. v. Cerveceria Modelo, 914 F.2d 900 (7th Cir.1990); Glasser v. American Federation of Musicians of U.S. & Can., 354 F.Supp. 1, 4 (D.C.N.Y.), aff'd, 487 F.2d 1393 (1973); see generally 1B Moore's Federal Practice p 0.405[4.-1] at 199 (1990). Their purposes are to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. at 94, 101 S.Ct. at 414. Were we to hold that Nord was denied the full and fair opportunity to litigate because of an allegedly erroneous legal ruling in Sil-Flo I, these doctrines would be eviscerated. Accordingly, we affirm the district court's dismissal of Sil-Flo II on the grounds of res judicata and collateral estoppel.
 
 
 
 *
 Honorable John L. Kane, Jr., United States Senior District Judge for the District of Colorado, sitting by designation
 
 
 [1]
 In addition to this state court action, the defendants filed an original action in federal district court premised on the same facts and legal theories as alleged in their counterclaim in this action. The district court dismissed this action on the basis of res judicata, and we affirmed that dismissal. See Doughty v. Ceparano, No. 88-2103 (10th Cir. Aug. 7, 1989) (unpublished disposition)
 
 
 [2]
 Sil-Flo, Inc. further argues that Rule 51 of the Federal Rules of Civil Procedure must be read in concert with Rule 46, in that counsel need not renew his objections to jury instructions after the charge if those objections were made clear in an earlier conference. We decline to interpret Rule 51 in this manner. At a minimum, counsel must note for the record at the close of the charge that his previous objections stand, although we have been critical of this practice as well. See, e.g., Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1514-15 (10th Cir.1984), aff'd, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985)
 
 
 [3]
 Because of confusion over the scope of the terms "res judicata" and "collateral estoppel", many courts now use the terms "claim preclusion" and "issue preclusion" in referring to these concepts. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 376 n. 1, 105 S.Ct. 1327, 1329 n. 1, 84 L.Ed.2d 274 (1985). For the sake of consistency, we use the terminology employed by the district court in this case
 
 
 [4]
 Nord also argues that the proceedings in Sil-Flo I were fundamentally unfair because the defendants in that case concealed the transfer of the Micropul perlite processing equipment during discovery. Had this transfer been timely disclosed, Nord contends that it could have properly framed an action for unfair use of a trade secret. Assuming that the alleged discovery abuses actually occurred, they are irrelevant. The jury in Sil-Flo I found that Nord had a trade secret in its customer list, not in its perlite processing technology or in the Micropul equipment. Nord's assertion that it was prejudiced by misrepresentations as to the transfer of this equipment is therefore without merit