**Glen Mac MURDOCK, Jr., Mac Eugene Murdock, Affiliated Ute Citizens of the State of Utah, Plaintiffs–Appellants,**

v.

**UTE INDIAN TRIBE OF UINTAH AND OURAY RESERVATION, a Federal corporation; Luke J. Duncan, Stewart Pike, Gary Poowegup, Sr., Floyd Wopsock, Alvin Pinnecoose, Curtis Cespooch, in their official capacity as members of the Business Committee of the Uintah and Ouray Indian Reservation, Defendants,**

and

**UTE Distribution Corporation, a Utah corporation; Manual Lujan, Jr., Secretary of the United States Department of the Interior, Defendants–Appellees.**

No. 91–4112.

United States Court of Appeals, Tenth Circuit.

Sept. 9, 1992.

---

Kathryn Collard (Stephen Russell, with her on the briefs), of Collard & Russell, Salt Lake City, Utah, for plaintiffs-appellants.

Stephen Roth, Asst. U.S. Atty., Salt Lake City, Utah, Robert S. Thompson, III, of Whiteing & Thompson, Boulder, Colo., and Max D. Wheeler of Snow, Christensen & Martineau, Salt Lake City, Utah (Dee V. Benson, U.S. Atty., and Camille N. Johnson of Snow, Christensen & Martineau, Salt Lake City, Utah, with them on the brief), for defendants-appellees.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and EISELE, Senior District Judge.*

EBEL, Circuit Judge.

In this appeal, we must determine whether collateral estoppel precludes the litigation of claims brought by the Affiliated Ute Citizens of the State of Utah and two individuals asserting that the Affiliated Ute Citizens of the State of Utah, and not the Ute Distribution Corp., is the authorized representative of the mixed-blood Utes for purposes of managing the mixed-blood Utes' portion of the Ute Tribe's indivisible assets. We conclude that the Supreme Court's opinion in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), precludes the appellants from relitigating this issue. Accordingly, we affirm the district court's grant of summary judgment in favor of the Ute Distribution Corp. and its co-appellee.

* The Honorable Garnett Thomas Eisele, Senior Judge, United States District Court for the Eastern District of Arkansas, sitting by designation.

## I. Background

Mixed-blood Utes are those members of the Ute tribe who either possess less than one-half degree of Ute Indian blood, or who possess more than one-half degree but choose to become members of the mixed-blood group. Full-blood Utes possess at least one-half degree of Ute Indian blood and do not make such a choice.[1] *See* 25 U.S.C. §§ 677a(b) & 677a(c). Glen Mac Murdock, Jr., one of the appellants in this case, is a mixed-blood Ute. His son, Mac Eugene Murdock, is the second appellant. The third appellant is the Affiliated Ute Citizens of the State of Utah ("AUC"), which is an unincorporated organization of mixed-blood Utes. The appellees are the Ute Distribution Corporation ("UDC"), which manages the mixed-blood Utes' mineral interests, and the United States Secretary of the Interior.[2]

The Ute Indian Tribe was divided into full-blood and mixed-blood Utes by the Ute Indian Supervision Termination Act of August 27, 1954 ("Ute Partition Act"), 68 Stat. 868 (codified at 25 U.S.C. §§ 677–677aa). The Ute Partition Act partitioned tribal assets between the full-blood and the mixed-blood Utes and terminated federal supervision of mixed-blood property. The Act directed that the tribe's business committee, on behalf of the full-blood Utes, and the "authorized representatives" of the mixed-blood Utes should together divide the tribe's assets, and in the case of the mixed-blood Utes, distribute the pro-rata shares. *See* 25 U.S.C. § 677i. Certain indivisible assets, consisting primarily of mineral rights and unliquidated claims, were to be managed jointly by the business committee for the full-blood Utes and by an autho-rized representative of the mixed-blood Utes.

The mixed-blood Utes' "authorized representative" for purposes of the indivisible tribal assets was initially the AUC. The AUC allegedly delegated this authority to the UDC in 1959; the AUC now disputes the validity of this delegation. The UDC issued ten shares of stock to each member of the mixed-blood group to represent his or her interest in the indivisible tribal assets. A number of mixed-blood Utes subsequently sold their shares at prices later determined to be substantially less than the stock's actual value.

For almost twenty-five years, the AUC has sought to challenge the legitimacy of the UDC's status as authorized representative of the mixed-blood Utes for purposes of managing their portion of the indivisible tribal assets. In a 1972 opinion, the Supreme Court concluded that the AUC had permanently delegated that authority to the UDC and stated, "Clearly it is UDC and not AUC that is entitled to manage the oil, gas, and mineral rights with the committee of the full-bloods." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 144, 92 S.Ct. 1456, 1467, 31 L.Ed.2d 741 (1972).

In the instant case, the appellants filed suit seeking various relief, including a declaratory judgment that the AUC and not the UDC was the mixed-blood Utes' authorized representative for purposes of the indivisible tribal assets. The UDC and the Secretary of the Interior argued that collateral estoppel now prevents the appellants from relitigating this issue. The district court agreed[3] and dismissed the UDC and the Secretary of the Interior from the suit. The court later entered final judgment as to this single claim pursuant to Fed.

---

**1.** We use the same designations that the parties use and that appear in the statute.

**2.** The Ute Indian Tribe and members of its business committee were defendants below, but are not parties to this appeal.

**3.** The district court concluded that several cases in addition to the Supreme Court's decision in *Affiliated Ute* precluded relitigation of these issues. *See Maldonado v. Hodel*, No. 89–4035, Slip Op. (10th Cir. June 28, 1990), *aff'g*, 683 F.Supp. 1322 (D.Utah 1988); *United States v.*

*Felter*, 752 F.2d 1505 (10th Cir.1985); *Ute Distribution Corp. v. United States*, 721 F.Supp. 1202 (D.Utah 1989), *rev'd*, 938 F.2d 1157 (10th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2273, 119 L.Ed.2d 200 (1992); *Hackford v. First Sec. Bank*, 521 F.Supp. 541 (D.Utah 1981), *aff'd*, Fed. Sec.L.Rep. (CCH) ¶ 99,402 (10th Cir.), *cert. denied*, 464 U.S. 827, 104 S.Ct. 100, 78 L.Ed.2d 105 (1983). In view of our conclusion that the Supreme Court's decision in *Affiliated Ute* constitutes collateral estoppel, we do not address the preclusive effects of these other decisions.

R.Civ.P. 54(b). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. The Supreme Court's *Affiliated Ute* Decision

To determine whether the Supreme Court's decision in *Affiliated Ute* precludes relitigation of the issue of whether the AUC or the UDC is the authorized representative of the mixed-blood Utes for purposes of the indivisible tribal assets, we must first look to the background of that case. In *Affiliated Ute*, the Supreme Court granted certiorari in and consolidated two Tenth Circuit cases, *Affiliated Ute Citizens v. United States*, 431 F.2d 1349 (10th Cir.1970), and *Reyos v. United States*, 431 F.2d 1337 (10th Cir.1970), and decided them together. Although the AUC sponsored both cases, they involved different, albeit related, issues.

In *Reyos*, a group of mixed-blood Utes sued a bank that acted as transfer agent for the shares of UDC stock. Also named as defendants were several officers of the bank and the United States. The plaintiffs contended that the bank and its officers had committed securities violations in encouraging mixed-blood Utes to sell their stock. The district court agreed and granted damages based on the difference between the fair market value of the UDC shares at the time of the sales and the value received by the sellers. The Tenth Circuit reversed, finding more limited liability and remanding for a recalculation of damages.

While *Reyos* was pending, the AUC filed the *Affiliated Ute* case against the United States. In *Affiliated Ute*, the AUC sought a pro-rata distribution of the mixed-blood Utes' share of the mineral interests and a declaration that the AUC and not the UDC was the authorized representative of the mixed-blood Utes for purposes of the mineral interest. The district court concluded that it did not have subject matter jurisdic-

tion and dismissed the suit on that basis. The Tenth Circuit affirmed.

On certiorari, the Supreme Court consolidated the two cases and heard and decided them together. The Court affirmed the Tenth Circuit in the *Affiliated Ute* case, but reversed in the *Reyos* case, essentially reinstating the district court's decision. *Affiliated Ute*, 406 U.S. at 156, 92 S.Ct. at 1473. Although the Supreme Court held that the district court properly dismissed the *Affiliated Ute* case for lack of jurisdiction over the United States, it nonetheless went on to discuss the "AUC's prayer for a determination as to management rights." *Id.* at 143, 92 S.Ct. at 1467. The court stated that the AUC had properly delegated its authority to the UDC and concluded, "Clearly, it is UDC and not AUC that is entitled to manage the oil, gas, and mineral rights with the committee of the fullbloods." *Id.* at 144, 92 S.Ct. at 1467. In dissent, Justice Douglas argued that the AUC had never properly delegated authority to the UDC. *Id.* at 159, 92 S.Ct. at 1475 (Douglas, J., concurring in part and dissenting in part).

## III. Collateral Estoppel

Collateral estoppel, also known as issue preclusion,[4] refers "to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 376 n. 1, 105 S.Ct. 1327, 1329 n. 1, 84 L.Ed.2d 274 (1985). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (citation and footnote omitted); *see also Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir.1990) (quoting *Allen* ).

4. The terms "collateral estoppel" and "issue preclusion" are used interchangeably. *See Allen v. McCurry*, 449 U.S. 90, 94 n. 5, 101 S.Ct. 411, 415 n. 5, 66 L.Ed.2d 308 (1980); *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 n. 3 (10th Cir.

1990); *Koch v. City of Hutchinson*, 814 F.2d 1489, 1493 n. 1 (10th Cir.1987), *modified on other grounds*, 847 F.2d 1436 (10th Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988).

■ In considering collateral estoppel, we first must determine whether to apply federal or state law. We are a federal court examining a question of federal law upon which another federal court, namely the Supreme Court, has previously ruled. Under these circumstances, we must rely on the federal law of collateral estoppel.[5] *See Blonder–Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971); *Meza v. General Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir.1990); *Fireman's Fund Ins. Co. v. International Market Place*, 773 F.2d 1068, 1069 (9th Cir.1985); Restatement (Second) of Judgments § 87, at 314 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court"); 18 Charles A. Wright et al., *Federal Practice & Procedure: Jurisdiction* § 4466 (1981 & Supp.1992) [hereinafter *Federal Practice & Procedure: Jurisdiction*].

In the Tenth Circuit, collateral estoppel requires that four elements be met:

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir.1992) (quoting *In re Lombard*, 739 F.2d 499, 502 (10th Cir.1984)); *see also Coffey v. Dean Witter Reynolds, Inc.*, 961 F.2d 922, 925 (10th Cir.1992). To determine if collateral estoppel prevents the appellants from litigating who is the mixed-blood Utes' authorized representative for purposes of the indivisible tribal assets, we must determine if these four factors have been met.

### A. Identical Issue

The issue the appellants are attempting to litigate is the same as the one addressed previously by the Supreme Court. In the present case, the appellants seek a declaratory judgment "that the plaintiff AUC, and not the UDC, is the authorized representative of the mixed[-]blood Utes for purposes of the 'joint management' of indivisible assets of the Ute Indian Tribe." Verified Complaint, App. to Appellant's Opening Br., Doc. 1, at 22. The Supreme Court addressed which organization, the AUC or the UDC, properly exercised management rights over mineral rights. *Affiliated Ute*, 406 U.S. at 143–44, 92 S.Ct. at 1467. The appellants do not seriously dispute that the issues are identical.

### B. Finally Adjudicated on the Merits

■ We hold that the Supreme Court did reach a final decision on the merits of whether the AUC was the mixed-blood Utes' authorized representative with respect to the indivisible tribal assets. Although resolution of this issue was unnecessary to the *Affiliated Ute* portion of the opinion, its resolution was a necessary part of the Court's decision in the *Reyos* portion of its opinion.

Adjudication on the merits requires that the adjudication be necessary to the judgment. *See Block v. Commissioners*, 99 U.S. 686, 693, 25 L.Ed. 491 (1878) ("[A] judgment of a court of competent jurisdiction is [as between the parties or their privies] everywhere conclusive evidence of every fact upon which *it must necessarily have been founded*.") (emphasis added); *Insurance Co. of North America v. Norton*, 716 F.2d 1112, 1115 (7th Cir.1983) ("It is axiomatic that a party will be precluded by collateral estoppel from relying on an argument only where the determination as to the argument relied on was essential to the judgment in a prior action."); *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 & n. 2 (9th Cir.1979) ("For the purpose

---

**5.** In their briefs, the parties rely predominantly on the Utah law of collateral estoppel. The requirements for collateral estoppel under Utah law appear to be substantially the same as under federal law. *Compare Berry v. Berry*, 738 P.2d 246, 248 (Utah App.1987) (requirements for collateral estoppel under Utah law) *with United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992) (requirements for collateral estoppel under Tenth Circuit law).

of issue preclusion (collateral estoppel) ... relitigation of an issue presented and decided in a prior case is not foreclosed if the decision of the issue was not necessary to the judgment....."); 18 *Federal Practice & Procedure: Jurisdiction* § 4421. In particular, once a court determines that it does not have subject matter jurisdiction to consider a claim, any discussion of the merits of that claim is unnecessary to the judgment and therefore does not constitute collateral estoppel for purposes of future litigation of issues involved in that claim. *See Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1279 (7th Cir. 1983).

In *Affiliated Ute*, the Supreme Court affirmed the Tenth Circuit's conclusion that the district court had correctly dismissed that case for lack of subject matter jurisdiction. Thus, had the Supreme Court decided the *Affiliated Ute* case alone, the Court's subsequent discussion of whether the AUC was the authorized representative of the mixed-bloods Utes would have been unnecessary to the decision and therefore would not have precluded relitigation of the issue. The Court did not decide *Affiliated Ute* alone, however, but rather considered it along with *Reyos*.

In order to resolve the securities and damages claims against the bank and its officers in the *Reyos* portion of the case, it was necessary for the Court to determine whether the UDC was the mixed-blood Utes' authorized representative. The Supreme Court concluded that the bank and two of its officers had violated the securities laws and that the district court had properly computed damages. In order for the Court to evaluate the issue of damages for loss of the UDC stock, the Court had to conclude that the stock was validly issued and had to determine the fair value of that stock. The district court had assessed the value of the UDC stock based on the assets held by the corporation, namely, the mineral rights, the unliquidated and unadjudicated claims against the United States, and all other indivisible tribal assets. Revenue from such assets were determined to be payable to the UDC and ultimately to be disbursed as dividends to the UDC stock-holders. The Tenth Circuit had remanded for a recomputation of damages, but the Supreme Court concluded that the record supported the district court's finding on damages and therefore reinstated it. To reach this conclusion, the Supreme Court also had to conclude that the assignment of the indivisible assets to the UDC was proper, for if it were improper, the UDC would have no rights with regard to the indivisible tribal assets, and the stock it issued would have been worthless.

Thus, there was a final adjudication on the merits with regard to the *Reyos* portion of the case that the rights to the indivisible assets of the mixed-blood Utes had been assigned to the UDC.

## C. *Privity*

The AUC was a party to both the *Affiliated Ute* case and to the instant case and therefore is bound by the prior judgment. We must address, however, two related privity issues: (1) whether the individual appellants in the current case are in privity with the AUC and (2) whether the AUC is in privity with the plaintiffs in the *Reyos* case.

### 1. Privity between Murdock and the AUC

■ The issue of whether an association's actions bind its members is quite complex. *See Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1410 (D.C.Cir.1985). Courts sometimes hesitate to find privity between an association and its members because the interests of all members may not be similar, and thus the association may not represent the interests of all members adequately. *See generally* 18 *Federal Practice & Procedure: Jurisdiction* § 4456. Conversely, where the association does adequately represent the interests of all members, a court will find privity. *See, e.g., Ellentuck v. Klein*, 570 F.2d 414, 425–26 (2d Cir.1978).

In this case, it is beyond dispute that Glen Mac Murdock's claims derive from the AUC for purposes of determining whether

the AUC is the mixed-blood Utes' authorized representative. For purposes of this appeal, the relief sought by the appellants, including Glen Mac Murdock, relates directly to the AUC. If the courts were to declare the AUC the mixed-blood Utes' authorized representative, the AUC could then provide benefits (in whatever form) from the indivisible tribal assets to its members. To the extent that Glen Mac Murdock would benefit if relief were obtained, he would do so only in a derivative capacity owing to his status as a member of the AUC. We therefore have no difficulty holding that privity exists between Glen Mac Murdock and the AUC.[6] *Cf. Sea–Land Services v. Gaudet*, 414 U.S. 573, 593–94, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974) ("[N]onparties may be collaterally estopped from relitigating issues necessarily decided in a suit brought by a party who acts as a fiduciary representative for the beneficial interest of the nonparties. In such cases, 'the beneficiaries are bound by the judgment with respect to the interest which was the subject of the fiduciary relationship....' ") (citation and footnote omitted).

To hold otherwise would lead to an untenable result. If a judgment regarding an association's status did not bind its members, then each member could relitigate the association's status until the association obtained a favorable result. This situation would undermine the very purpose of collateral estoppel.

### 2. Privity between the AUC and the Reyos Plaintiffs

The AUC sponsored the companioned *Reyos* case. All the plaintiffs in the *Reyos* case were members of the AUC. The AUC brought the *Affiliated Ute* case to provide an alternative remedy to the damages it viewed as inadequate in the *Reyos* case. The same attorneys represented the petitioners in both cases before the Supreme

Court and filed a single brief. The AUC cannot now argue that its interests were not adequately represented during the *Reyos* litigation. Where an organization brings litigation in the name of individuals but retains "effective control", "[o]rdinary principles of preclusion by participation and control suggest that the organization should be subject to issue preclusion in later litigation." 18 *Federal Practice & Procedure: Jurisdiction* § 4456, at 492. Therefore, we hold that the AUC was in privity with the *Reyos* plaintiffs.

### D. Full and Fair Opportunity to Litigate

The inquiry into whether a party had a full and fair opportunity to litigate an issue "[o]ften ... will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Sil–Flo, Inc.*, 917 F.2d at 1521 (citation omitted). After consideration of these factors, we conclude that this final requirement for collateral estoppel was met.

The AUC's initial complaint in the *Affiliated Ute* case sought a determination of its status as the mixed-blood Utes' authorized representative "to exercise management privileges for its members with respect to their unadjudicated legal claims and the mineral estate." *See* Br. for Petitioners at 5, in App. to Joint Br. for Appellees UDC and United States, Tab 1. Because the district court dismissed that case for lack of subject matter jurisdiction, both the district court and the Tenth Circuit failed to reach this issue. Although the AUC did not raise the authorized representative issue in the *Reyos* case, the Supreme Court indicated its view that common issues arose in the *Reyos* and *Affiliated Ute* cases when it consolidated them. The AUC proceeded to brief the issue in its consolidated briefs

---

**6.** Mac Eugene Murdock is apparently not a member of the AUC. *See* Reply Br. of Appellants at 6. However, to the extent that he would not benefit from a declaratory judgment that the AUC is the mixed-blood Utes' authorized representative for purposes of the indivisible tribal assets, he has no standing to argue the issue. To the extent he would benefit from such a judgment, the same reasoning regarding privity that we apply to his father also applies to him.

and asked the Supreme Court to decide the issue. *See id.* at 6–7, 13, 41–44, 54–55; Reply Br. for Petitioners at 22–31, 36–37, 41, in App. to Joint Br. for Appellees UDC and United States, Tab 3.

Under these circumstances, the AUC cannot now complain that it did not have a full and fair opportunity to litigate the issue. It raised the issue in its initial complaint in one of the cases. It asked the Supreme Court to decide the issue in its brief, and it argued its position extensively. The Supreme Court did decide the issue. In fact, the AUC does not object to the Supreme Court's addressing the issue; rather, it objects only to the fact that the Supreme Court resolved the issue against it. An adverse judgment does not reflect, however, on a party's opportunity to litigate an issue. Indeed, but for a prior adverse judgment, a party would not need to argue against collateral estoppel. We hold that the AUC had a full and fair opportunity to litigate its status as the mixed-blood Utes' authorized representative for purposes of the indivisible tribal assets.

## IV. Conclusion

The Supreme Court's decision in *Affiliated Ute Citizens v. United States* meets the four elements for collateral estoppel that our precedent requires. The decision held that the UDC, and not the AUC, was the entity "entitled to manage the oil, gas, and mineral rights with the committee of the full-bloods." 406 U.S. at 144, 92 S.Ct. at 1467. Thus, the doctrine of collateral estoppel precludes the appellants here from relitigating that issue. Accordingly, we AFFIRM the judgment of the district court.