**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 13 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VIRGINIA BARR,

      Plaintiff-Appellant,

v.

MARVIN T. RUNYON, Postmaster
General,

      Defendant-Appellee.

No. 98-6395
(D.C. No. 97-CV-1527-A)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **HOLLOWAY**, and **HENRY**, Circuit Judges.

---

Plaintiff-Appellant Virginia Barr challenges the district court's grant of

summary judgment on her claim that the United States Postal Service

discriminated against her in violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e-16 ("Title VII"). Appellant argues that the

district court improperly applied collateral estoppel to bar her claim. We exercise

jurisdiction under 28 U.S.C. § 1291 and affirm the district court's judgment.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I.

The sequence and timing of events is important to an understanding of this case; thus we lay out the chronology in particular detail. Virginia Barr began her employment with the United States Postal Service in April 1971. On July 10, 1989, Barr asserts she ceased going to work because she was disabled as a result of sexual harassment and race discrimination that she endured while at work. By letter dated July 10, 1989, Barr contacted the EEO office of the Postal Service in Oklahoma City in accordance with 29 C.F.R. § 1613.213 (1987)[1] and asserted that she "sustained act's [sic] of prohibited age, sexual harassment, sex and race discrimination by USPS management and supervising personnel." Due to insufficient information contained in the complaint, the EEO counselor contacted Barr and requested additional information. Barr wrote to the EEO counselor stating that she was medically unable to respond.[2] The EEO counselor responded

---

[1] 29 C.F.R. § 1613.213 (1987) stated that "[t]he agency shall require that an aggrieved person who believes that he or she was discriminated against because of race, color, religion, sex, national origin, age, or handicapping condition consult with an Equal Employment Opportunity Counselor to try to resolve the matter." The regulations were amended in October 1992. The regulations maintained, however, the requirement that an employee first contact a counselor to try to resolve the complaint informally. See 29 C.F.R. § 1614.105(a).

[2] At the same time that Barr was pursuing her EEO complaint and claiming she was medically unable to respond to the EEO counselor, she was also filing a claim with the Office of Workers' Compensation Programs ("OWCP"). Barr followed up on her claim to OWCP with a ten-page letter supporting her worker's compensation claim, which claimed that sexual harassment by her supervisor had

(continued...)

by sending a letter to Barr in which he stated that her request for EEO counseling would be held in abeyance for 14 days and would commence again when she supplied the information previously requested. The EEO counselor subsequently made repeated requests for information in 1989, 1990, and 1991. Barr failed to supply the requested information, and thus the pre-complaint process was never completed.

In December 1995, Barr filed a complaint in the United States District Court for the Western District of Oklahoma alleging hostile work environment harassment. See Barr v. Runyon, No. CIV-95-1915-A (W.D. Okla. 1996) ("Barr I"). On December 12, 1996, the district court granted the Postmaster General's motion for summary judgment, holding that the court lacked subject matter jurisdiction because Barr failed to exhaust her administrative remedies. The court further found there was no basis for equitable tolling, rejecting Barr's argument that the Postal Service prevented her from completing the administrative process. Barr never appealed this decision.

---

[2](...continued)
aggravated her cardiovascular disease. A letter dated October 26, 1989 stated that Barr "stands ready, willing, and able to respon[d] to any inquiries from OWCP." On April, 2, 1990, OWCP initially denied Barr's claim. However, after Barr submitted further information, including a telephone conference on March 11, 1991, her claim was approved.

On December 24, 1996, Barr requested further processing of her July 10, 1989 administrative EEO complaint. On January 13, 1997, the postal service assigned her inquiry an agency number, 4G-730048-97, (hereinafter referred to as the "Initial EEO Action"), observed that Barr had failed to respond to repeated requests for information to support her claim, determined that no action would be taken on this informal complaint, and informed Barr that if she disagreed with the decision, she could file a formal complaint within fifteen days. Barr responded by sending a letter to Ed Pitts, an EEO Complaints Processing Specialist, dated January 30, 1997, which contained an undated formal EEO complaint alleging race, sex, and age discrimination occurring from January 1989 to the present. On March 24, 1997, the agency issued a final decision which found that the formal complaint could not be processed because Barr failed to complete the requisite precomplaint process of attempting informal resolution with an EEO counselor pursuant to 29 C.F.R. § 1614.105(a). In this decision, Barr was directed to contact the EEO counselor within 15 days if she wished to pursue the matter, so that an EEO counselor would have the opportunity informally to resolve the complaint. Barr was further advised that the agency would treat the date of her formal complaint, January 30, 1997, as the date of initial counselor contact. The decision further informed Barr that if she was dissatisfied with this final decision she had the right to file a civil suit in the appropriate United States District Court

within 90 days or to appeal the decision to the Equal Employment Opportunity Commission. Barr did not file suit within 90 days of this decision.

Barr subsequently contacted the EEO office. A new agency number was assigned to her case, 4G-730-0105-97, (the "Second EEO Action"), but January 30, 1997 was used as the date of contact. This time, the matter followed the normal administrative process of informal counseling, counselor's report, formal complaint, and final agency decision. This Second EEO Action alleged the same race and sex discrimination and retaliation alleged in the Initial EEO Action. The final decision by the Postal Service on the Second EEO Action, on July 15, 1997, dismissed Barr's complaint as untimely and moot. EEO regulations in effect at the time of Barr's complaint required an employee to contact an EEO counselor within 30 days of the date of the discriminatory events, or within 30 days of the date when the complainant first became aware or should reasonably have become aware of the alleged discrimination. See 29 C.F.R. §1613.214(a)(i) (1987).[3] Because Barr waited over six years before contacting the EEO counselor to commence the informal process, with the filing of a letter and complaint on January 30, 1997, and the agency found no credible reason for the delay, Barr's claim was dismissed. The decision stated that Barr failed to support the claim

---

[3] In 1992, these regulations were amended to require an employee to initiate contact within 45 days of the alleged act of discrimination. See 29 C.F.R. § 1614.105(a)(1).

- 5 -

that she was "initially denied access to the EEO process" and stated that the facts showed that "a significant effort was made by the agency to obtain the necessary information in order to process your first complaint." Thus, because Barr could not provide a credible explanation for her untimely contact and delay in pursuing her claim, the agency dismissed the complaint. The agency also found that it could not remedy the complaint because both Barr and her alleged harasser no longer worked for the Postal Service.[4]

Plaintiff filed suit in district court within 90 days after receiving this final decision on her Second EEO Action. The Postmaster General moved to dismiss, or, alternatively, for summary judgment. See Barr v. Runyon, No. CIV-97-1527-A (W.D. Okla. 1998) ("Barr II"). The district court denied the motion, but reserved decision on whether Barr was precluded from relitigating the factual and legal issues decided in Barr I. The Postmaster General subsequently filed a second motion for summary judgment arguing that the only claims before the court were those contained in the Second EEO Action and that these claims must be dismissed as untimely and moot.

On August 21, 1998, the district court entered summary judgment in favor of the Defendant. The court first stated that because Barr did not timely file suit

_____

[4] Barr was discharged from the USPS on December 4, 1990, for unsatisfactory attendance.

- 6 -

within 90 days after the final decision in the Initial EEO Action, it did not have jurisdiction over the matters in that complaint. The court only had jurisdiction over matter contained in the Second EEO Action. Applying collateral estoppel, the district court then refused to reconsider issues it decided in Barr I, namely that Barr failed to exhaust administrative remedies and that no equitable basis for excusing the lack of exhaustion existed. The court alternatively stated that even if collateral estoppel did not apply, there was no material dispute of fact over whether the Postal Service was to blame for Barr's failure to follow proper administrative procedures. The court then granted summary judgment to the Defendant. Barr appeals the district court's grant of summary judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## II.

Summary judgment orders are reviewed de novo, using the same standards as applied by the district court. See Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir. 1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Although the movant must show the absence of a genuine issue
> of material fact, he or she need not negate the nonmovant's

claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof.

Simms v. Oklahoma ex. rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999) (internal citations and quotations omitted, cert. denied, 120 S.Ct. 53 (1999).

A federal employee who believes she is the victim of illegal employment discrimination may bring a claim in federal district court under Title VII. See 42 U.S.C. § 2000e-16(c); Belhomme v. Widnall, 127 F.3d 1214, 1216 (10th Cir. 1997). As a prerequisite to her suit, however, the employee "must file an administrative complaint concerning his [or her] allegations, and he [or she] may not bring his [or her] suit more than ninety days after receiving a final decision

from either his [or her] employing agency or from the EEOC."[5]  Belhomme, 127

F.3d at 1216.[6]

When Barr went back to the EEO counselor following the final decision on her Initial EEO Action, she was assigned a new agency number–4G-730-0105-97. This time her complaint followed the normal administrative process of informal counseling, counselor's report, formal complaint, and final agency decision.  In the final agency decision on this Second EEO Action, the EEO determined that the governing regulations required dismissal of Barr's complaint.  Relying on 29 C.F.R. § 1614.105(a)(1), which requires a complainant to bring an alleged discriminatory act to the attention of an EEO counselor within 45 days of the date

---

[5] In 1991, Congress amended 42 U.S.C. § 2000e-16(c) by extending the deadline from thirty to ninety days in order to provide federal employees with a longer statute of limitations for Title VII suits.  See Pub. L. 102-166, § 114(1), 105 Stat. 1079 (1991).  This amendment went into effect on November 21, 1991. We have held that when the agency's "final action occurs after the effective date of the act, then the new ninety-day deadline applies to the case even if the underlying employment decision occurred before the act went into effect." Belhomme, 127 F.3d at 1216 n.2.  Thus, the ninety day period applies to Barr, even though she complains of activity from 1989, because a final agency decision was not issued until after 1991.

[6] The Postmaster General contended at oral argument to this court that Barr's claim should be dismissed because she did not timely file suit in the district court following the EEO's final decision in her initial EEO complaint. The Postmaster General argued that because Barr's Second EEO Action alleged the same discriminatory acts as her initial EEO Action, she was attempting to extend the 90 day period in which to file suit by filing a successive EEO complaint.  However, we need not address this issue because the Second EEO Action is fatally flawed in any event.

of the alleged act, and section 1614.107(g) which authorizes the agency to dismiss a complaint when the complainant fails to respond within 15 days after a written request to provide relevant information, the EEO found Barr's second EEO complaint untimely. The final decision noted that original contact with an EEO counselor took place on July 10, 1989. Multiple requests for information by the counselor in 1989, 1990, and 1991 went unanswered. The EEO rejected Barr's claim that she had attempted in good faith to provide the necessary information from 1989 to 1991, and instead found that significant efforts were made by the agency to obtain the necessary information. Thus, the EEO determined Barr's complaint was untimely because it was pursued more than six years after the allegedly discriminatory acts took place.

Dissatisfied with this decision, Barr brought suit in federal district court in Barr II and argued that "she in fact made reasonable, good faith efforts in 1989, 1990 and 1991 to provide the necessary information." The district court refused to consider this argument on the basis of collateral estoppel. The court concluded that it had decided this exact issue against Barr in Barr I when it had dismissed her claim for lack of jurisdiction. We agree with the district court that collateral estoppel prevents Barr from relitigating the question of whether she attempted to comply with EEO regulations.

We apply the federal law of collateral estoppel because the issue sought to be introduced stems from a prior federal court judgment. See Orjias v. Stevenson, 31 F.3d 995, 1010 (10th Cir. 1994). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation, 975 F.2d 683, 686 (10th Cir. 1992); Dodge v. Cotter Corp., 203 F.3d 1190, 1197 (10th Cir. 2000). Principles of collateral estoppel "apply to questions of jurisdiction as well as to other issues." United States v. Lots 43 through 46, 935 F.2d 1134, 1138 (10th Cir. 1991) (internal quotations omitted).

In this Circuit, collateral estoppel requires that four elements be met: (1) the issue presented in the prior action is identical to the one now in question, (2) the first case was a final judgment on the merits, (3) the party against whom the doctrine is invoked was a party to the first litigation or in privity with a party to the prior litigation, and (4) the party against whom it is raised had a full and fair opportunity to litigate the issue in the prior action. See Dodge, 203 F.3d at 1198; Murdock, 975 F.2d at 687.

First, the issue that Barr is attempting to litigate in this action is the same issue decided by the district court in Barr I. Barr argues on appeal that she acted in good faith to comply with the requests for information by the EEO counselor

- 11 -

and offers as evidence a letter she allegedly sent to her counselor in January 1991. Barr contends it was the EEO that caused the delay in processing her claim, and therefore she was not untimely in pursuing her complaint. The district court squarely addressed this argument in Barr I and held that Barr failed to show that the delay was caused by the postal service. The court also specifically addressed the letter of January 31, 1991, and determined that it failed to raise a question of fact as to whether Barr furnished the requested information to her EEO counselor, because it was unsigned and there was no proof it was ever sent.

Second, we find that Barr I did reach a final adjudication on the merits. "Adjudication on the merits requires that the adjudication be necessary to the judgment." Murdock, 975 F.2d at 687. In Barr I, the court determined that it lacked jurisdiction because Barr had failed to exhaust her administrative remedies. In reaching its conclusion that Barr had not exhausted her administrative remedies, the court determined that Barr had failed to cooperate with the agency to provide information concerning her complaint. Additionally, the court rejected Barr's argument that the EEO had prevented her from pursuing her claim, and instead found that the EEO had "made a significant effort to persuade [Barr] to comply with the requests for information that would substantiate her allegations of discrimination." These determinations were necessary to the court's conclusion that it lacked jurisdiction.

In Khader v. Aspin, 1 F.3d 968 (10th Cir. 1993), this court held that while exhaustion of administrative remedies is a jurisdictional prerequisite to suit in a district court a "[g]ood faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information is all that exhaustion requires." Id. at 971 (internal quotations omitted). The plaintiff in Khader argued that she had made good faith efforts to comply with requests for information but her efforts had been "consistently stymied" by the agency. Id. Although we ultimately rejected this argument, it was necessary to address it. If the plaintiff had established that she had been prevented from complying with agency requests for information despite her continued efforts, we would have considered her claims exhausted, and thus we would have had jurisdiction. Similarly, in this case, had Barr been able to convince the district court that the EEO had prevented her from complying with requests for information despite her efforts, it might have concluded she had exhausted administrative remedies. We, therefore, find there was a final adjudication on the merits.

Third, there is no question that Barr was a party to the first action. In fact, all parties are identical. Finally, Barr had a full and fair opportunity to litigate the issue in question in Barr I. In making this determination we "often will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective

litigation was limited by the nature or relationship of the parties." Murdock, 975 F.2d at 689 (internal quotations and alterations omitted). See also Sil-Flo Inc. v. SFHC Inc., 917 F.2d 1507, 1521 (10th Cir. 1990) (full and fair opportunity to litigate "centers on the fundamental fairness of preventing the party from relitigating an issue he has lost in a prior proceeding"). In Barr I, Barr raised the claim that she was prevented from completing the precomplaint process as a means of explaining her alleged failure to exhaust administrative remedies. She had every incentive to fully litigate the issue in the first action to keep her claim alive, and there is no contention that she was prevented from fully arguing the issue before the court in Barr I. Moreover, although Barr failed to appeal the decision in Barr I, there is no evidence that she was prevented from taking an appeal.

Thus, all four requirements of collateral estoppel have been met in this case. Once collateral estoppel is applied to prevent Barr from religitating whether the EEO prevented her from exhausting her remedies, summary judgment is appropriate. Barr has presented no other evidence that a material question of fact exists as to whether the EEO was incorrect in dismissing her complaint as untimely. We therefore AFFIRM the district court's grant of summary judgment in favor of the USPS.

- 14 -

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge