107 F.3d 21
 97 CJ C.A.R. 290
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Linda HANSEN, Monte T. Hansen, Plaintiffs-Appellants,
v.
SEA RAY BOATS, INC., Defendant-Appellee.
Monte C. HANSEN, Linda K. Hansen, Plaintiff-Appellee,
Monte T. HANSEN, Duane Jess Humphries, Carol Ravarino,
Richard Ravarino, Plaintiffs,
v.
SEA RAY BOATS, INC., Defendant-Appellant,
BRUNSWICK CORP., a Delaware corporation; Southwest Marine,
an Arizona corporation; Professional Mariner, a
California corporation; Newmark
Products, Defendants. No. 94-4252
 (D.C.No. 88-CV-708-G)
No. 94-4252, 95-4190.
 United States Court of Appeals, Tenth Circuit.
 Feb. 20, 1997.
 
 Before TACHA, EBEL, and BRISCOE, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 3
 In 1987, plaintiffs Monte C. and Linda K. Hansen purchased a twenty-five foot cruiser manufactured by defendant Sea Ray Boats, Inc. On April 1, 1988, the Hansens' son, Monte T. Hansen, and others sustained injuries from in-water electrical shock, caused by a faulty grounding system in the boat. All three Hansens, and other plaintiffs who are not parties to this appeal, brought suit in the United States District Court for the District of Utah. Mrs. Hansen, who was on the boat and witnessed her son begin to drown because of the electrical current, brought a claim for negligent infliction of emotional distress. Her son brought a claim for negligence, and the Hansens jointly brought claims for breach of warranty.
 
 
 4
 The district court granted Sea Ray's motion for summary judgment on Mrs. Hansen's claim after the Utah Supreme Court answered questions certified to it regarding the scope of a negligent infliction of emotional distress cause of action under Utah law. Mrs. Hansen appeals this judgment. Monte Hansen's claim was tried to a jury and a verdict was returned in favor of Sea Ray. The district court denied Monte Hansen's motion for new trial, and he appeals. The claims of Mrs. Hansen and Monte Hansen are the subject of case No. 94-4252. Finally, the parties agreed to bifurcate the warranty portion of this action from the negligence portion. In the warranty action, the Hansens prevailed on the merits and were eventually awarded attorney fees under the Magnuson-Moss Warranty Act (15 U.S.C. § 2310). Sea Ray does not appeal the merits of the warranty judgment, arguing, in case No. 95-4190, only the propriety of the attorney fee award. Before addressing the questions presented in these appeals, we first address the Hansens' pending motion to dismiss the appeal in case No. 95-4190.
 
 
 5
 Motion to Dismiss Appeal in Case No. 95-4190
 
 
 6
 The Hansens filed a motion to dismiss the appeal in case No. 95-4190, arguing that Sea Ray's notice of appeal from the warranty judgment was untimely. The verdict in favor of the Hansens on the warranty claims was returned on June 5, 1995, and judgment was entered on June 19. On June 29, Sea Ray served and filed a motion for new trial. A hearing was held on September 8, and the district court denied the motion from the bench, with a written order filed on September 28. On September 28, the district court also awarded attorney fees to the Hansens on the warranty claims. On October 4, Sea Ray served a timely motion to amend the attorney fees judgment. On November 13, Sea Ray filed a motion for extension of time to file a notice of appeal from the merits judgment. On November 21, Sea Ray filed a notice of appeal indicating that it was appealing from the judgment on the merits of the warranty claim as well as the award of attorney fees. On January 4, the district court denied both the motion to amend the attorney fees judgment and the motion for extension of time.
 
 
 7
 Probably realizing that the notice of appeal as to the merits of the warranty judgment was untimely, see Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202 (1988) (holding unresolved issue of attorney fees did not prevent judgment on the merits from being final), Sea Ray has not pursued the merits of the warranty judgment on appeal. See Brief of Sea Ray at 6.
 
 
 8
 Sea Ray's notice of appeal with regard to the attorney fees, however, is timely. The fact that the notice of appeal was filed before the district court ruled on the timely motion to amend is of no moment. Under Fed. R.App. P. 4(a)(4), a notice of appeal filed before the disposition of a timely motion to amend becomes effective upon the entry of the judgment on the motion. Because Sea Ray has limited its appeal to the attorney fees judgment, a judgment over which this court has jurisdiction, the motion for damages for filing a frivolous appeal is not well taken. The Hansens' motion to dismiss the appeal in case No. 95-4190 and their motion for damages for delay and costs are both denied.
 
 
 9
 Linda Hansen's Claim of Negligent Infliction of Emotional Distress
 
 
 10
 In 1988, the Supreme Court of Utah held that a cause of action could be maintained in Utah for negligent infliction of emotional distress. See Johnson v. Rogers, 763 P.2d 771, 782, 785 (Utah 1988). A majority of the court agreed that the test for determining liability for the tort would be the standards as set forth in section 313 of the Restatement (Second) of Torts and as explained in the accompanying comments. See id. at 785 (Zimmerman, J., joined by three other justices, concurring in part).
 
 The Restatement provides:
 
 11
 (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
 
 
 12
 (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
 
 
 13
 (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.
 
 
 14
 (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.
 
 
 15
 Restatement (Second) of Torts § 313 (1965) (emphasis added). This standard is commonly referred to as the "zone of danger" test. See Johnson, 763 P.2d at 779. The issue on appeal is whether, at the time the order was certified to the Utah Supreme Court, there existed a disputed issue of material fact regarding Mrs. Hansen's exposure to "an unreasonable risk of bodily harm," see Restatement (Second) of Torts § 313 (1965), or, put another way, whether she was in the zone of danger. The parties agreed in the district court that the test was a dual one: a putative plaintiff must have feared for his or her own safety, and that fear must have been based on actual danger. See Supp.App. at 97-98; see generally Restatement (Second) of Torts § 313 & cmt. d (1965).
 
 
 16
 During the hearing on Sea Rays' motion for summary judgment on Mrs. Hansen's claim, the court focused on two questions: (1) would the fact that Mrs. Hansen was watching her son in a hazardous situation, as opposed to observing a stranger in similar peril, alter the determination of whether she was in the zone of danger because of her possible impulse to rescue her son? see Supp.App. at 105, 109-10, 113; and (2) while Mrs. Hansen may not have been in actual danger, what effect would there be from her genuine, albeit incorrect, fear that she was? See id. at 103; see also App. at 159 (transcript of certification order hearing).
 
 
 17
 After listening to the arguments about whether the facts established Mrs. Hansen's presence in the zone of danger, the court informed the parties that it would grant Sea Ray's motion for summary judgment unless Mrs. Hansen wished to file a motion for certification to the Utah Supreme Court focusing on the concerns developed at the hearing and mentioned above. The parties jointly requested certification. With the approval of both counsel for the Hansens and counsel for defendants as to form, the district court certified the following questions to the Utah Supreme Court:
 
 
 18
 1. Whether a person not actually threatened with bodily harm, who incorrectly but reasonably believes he or she is actually threatened with bodily harm, has a claim for negligent infliction of emotional distress that satisfies the "threat of harm" requirement of Section 313 of the Restatement (Second) of Torts, as adopted by the Utah Supreme Court in Johnson v. Rogers, 763 P.2d 771 (Utah 1988).
 
 
 19
 2. Whether a person who witnesses others receiving bodily harm and fears for his or her own safety, although that person does not comprehend the source of the harm and therefore does not fear harm from that particular source, has a claim for negligent infliction of emotional distress that satisfies the "fear for one's own safety" requirement of Section 313 of the Restatement (Second) of Torts, as adopted by the Utah Supreme Court in Johnson v. Rogers.
 
 
 20
 3. If the answer to question 1 is no, would the answer be yes if the person described therein witnesses an immediate family member threatened with actual bodily harm.
 
 
 21
 App. at 186-87. When the Utah Supreme Court answered all three questions in the negative, the district court entered summary judgment for Sea Ray.
 
 
 22
 On appeal, Mrs. Hansen contends the questions of law certified to the Utah Supreme Court were based on a hypothetical set of facts and that "[t]here has never been a bona fide finding by the lower court that Mrs. Hansen never feared or was threatened by the electrical current once it was determined to have been the source of harm to those who received electrical shocks." Opening Brief of Plaintiffs at 6. Mrs. Hansen argues that issues remain regarding her fear for her own safety, and that the issue of whether she was threatened with harm "fell into a procedural void." Id. at 6-7. The upshot of the certification proceeding, according to Mrs. Hansen, was to transform hypothetical facts used for the purpose of eliciting a legal opinion from the Utah Supreme Court into actual undisputed facts supporting the district court's legal conclusion that Mrs. Hansen was not in the zone of danger.
 
 
 23
 We view this appeal as asking us to decide whether the facts, as framed in the certification order, were hypothetical only, or whether they had already been decided by the district court prior to the certification. On review of the certification order, we conclude that the only statement Mrs. Hansen could logically take exception to is the first phrase of the first question: "[w]hether a person not actually threatened with bodily harm, who incorrectly but reasonably believes he or she is actually threatened with bodily harm, has a claim...." App. at 186. This wording established for the Utah Supreme Court that Mrs. Hansen, herself, was not in the zone of danger. The wording of the second question takes into account the fact that Mrs. Hansen feared for her own safety, a finding necessary to her recovery, but did not comprehend the source of the danger (because the agent of the danger was not identified to be electricity until later). This question has no negative connotations for Mrs. Hansen. It simply reflects the apparent state of the record.[1] The third question asks whether a relationship with the actual victim is important in determining the zone of danger, thus giving the Utah court the opportunity to broaden its law beyond that established in Johnson and, arguably, giving Mrs. Hansen an additional basis for her claim. So, we focus on whether there was a genuine dispute as to Mrs. Hansen's actual exposure to bodily harm at the time the certification order was prepared, or whether the district court had resolved that issue as a matter of law prior to certification.
 
 
 24
 Our review of the record, particularly the transcripts of the summary judgment hearing and the certification order hearing, convinces us that the district court had decided that Mrs. Hansen was not threatened by bodily harm at the time of the incident and was thus not in the zone of danger. Mrs. Hansen's argument that the district court's summary judgment order was based only on hypothetical facts is, therefore, without merit.
 
 
 25
 At the outset, the parties agreed that the court would have to decide the meaning of the zone of danger under the circumstances presented. See Supp.App. at 97. During the course of the summary judgment hearing the court made the following observations:
 
 
 26
 "Suppose I were to determine as I think I easily could at this point that there was a reasonable basis for fear. Is it fatal that in fact there was no danger?" Id. at 103;
 
 
 27
 "And here it is not alleged or even claimed that there was physical danger by simply being on the boat.... I'm not sure that that's what [plaintiff's counsel] agrees to but I suppose that's the case." Id. at 104.
 
 
 28
 Turning to the fact that Mrs. Hansen's son was a direct victim, the court stated:
 
 
 29
 "Well the only real question that is, the court is in doubt on is whether the relationship has any bearing upon actual danger." Id. at 113.
 
 The court also observed:
 
 30
 The thing that's just giving to me a little bit of interest, in the circumstances of an accident that's really traumatic, a person who is intimately connected with the person in the danger might very well do an irrational thing as jumping out of a window in an earthquake and you would be saying, everything would be just perfectly fine if you just stay right there under the table.
 
 
 31
 You're not in any danger if you stay there so you're not in the zone of danger but when that happens a person objectively might do some irrational thing if they were related to the person and I don't know whether that has a bearing on determining whether a person, though otherwise out of danger is in danger because of her relationship.
 
 
 32
 Id. at 109-10. In the certification order hearing, the court made the following observations:
 
 
 33
 "Well, I think you both agree don't you that she was, in fact, was not in the zone of danger?" App. at 158.
 
 
 34
 In trying to concisely frame the question to be certified, it is clear that the court was no longer concerned about actual threat of bodily harm. The court stated:
 
 
 35
 "Well the whole thing we're trying to do here as I have conceived it is to test whether a person's reasonable belief and fear based upon that reasonable belief coupled with witnessing a family member, a close family member who clearly is in danger, whether that is enough, that's it, isn't it?" Id. at 159.
 
 
 36
 And again, the court's thinking was clearly indicated:
 
 
 37
 That's the only thing we're trying to do. We're not trying to determine what is the zone of danger or whether her fear was reasonable, those are--if the Supreme Court of Utah should say, a person who is not in the zone of danger, whatever that is, has reasonable fear and it involves a family member, a close family member and if the Supreme Court of Utah should say, that isn't enough, that's that.
 
 
 38
 If they should say that is enough then we have some question of fact to try, was it reasonable for her to be in fear, was she really in fear, was--and the reasonableness of the whole thing, I think there would be questions of fact but I don't think we need to implicate the Supreme Court of Utah in any of that.
 
 
 39
 Id. at 161. The district court clearly had decided that Mrs. Hansen was not in the zone of danger:
 
 
 40
 "I think that's what has to be stated to the Supreme Court. She is wrong, she was not in the zone of danger." Id. at 162
 
 
 41
 "Well I think the questions as have been suggested by [defense counsel] ought to be combined into just one question. For instance the first question doesn't have the element that I think it has to have ... [w]hether a person who is not in the zone of danger--"
 
 
 42
 Id. at 163.
 
 
 43
 "[H]as there ever been a case that addressed the question of whether a person believes, subjectively believes they're in the zone of danger but wrongly so?" Id. at 165.
 
 Finally, the court summarized the issue:
 
 44
 "Well I'm interested in the fundamental question whether a person who isn't in the zone of danger who believes that they are and has a reasonable fear and there is a family member involved has a cause of action.... If you want to certify something like that and can frame it together fine, if you don't, let's get on with it, I'll rule on the thing." Id. at 174-75.
 
 
 45
 While it would have been preferable for the district court to make an explicit finding that Mrs. Hansen was not in the zone of danger as a matter of law before the certification, we conclude it is clear from the district court's remarks that the court was of that opinion. The questions were certified for guidance in situations where someone might mistakenly believe he was in danger but was actually safe, and in situations where the actual victim was closely related to the claimant. Given the observations of the court in the record, we conclude there was no dispute of material fact regarding Mrs. Hansen's presence in the zone of danger given the state of the law in Utah at the time and absent any expansion of that law by the Utah Supreme Court. Thus, the wording of the certification order with regard to the first question was not merely a hypothetical, but was based on the decision of the district court that Mrs. Hansen was not actually threatened with physical harm. Once the Utah Supreme Court answered the questions in the certification order in the negative, Mrs. Hansen had no claim remaining, and the entry of summary judgment by the district court was proper.[2]
 
 
 46
 As we have noted, we do not have the complete summary judgment record. The parties in the district court refer to Mrs. Hansen's deposition but it is not in our record, and the only evidence we have going to Mrs. Hansen's claim is her affidavit. To the extent that Mrs. Hansen is asking us to review the propriety of the district court's determination regarding her presence in the zone of danger, we are unable to do so without a complete record. See Ewers v. Board of County Comm'rs, 802 F.2d 1242, 1250 (10th Cir.1986) (unable to review claim because evidentiary matters considered and relied on by district court are not included in record on appeal). When reviewing the entry of summary judgment, we perform the same analysis as the district court, determining whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In the absence of a complete record, we are unable to conduct a de novo review and must, therefore, affirm the conclusion of the district court that Mrs. Hansen was not actually threatened with bodily harm, and that summary judgment for Sea Ray was proper. See Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979-80 (10th Cir.1992).
 
 The Negligence Claim of Monte Hansen
 
 47
 Monte Hansen contends the jury's verdict finding no negligence on the part of Sea Ray is not supported by the law and is contrary to the weight of the evidence. Monte Hansen failed to move for a directed verdict at the end of all the evidence. By virtue of this failure, he has forfeited his opportunity to secure appellate review of the sufficiency of the evidence. See Green Constr. Co. v. Kansas Power & Light Co., 1 F.3d 1005, 1012 (10th Cir.1993). We therefore decline to disturb the verdict of the jury.
 
 
 48
 Monte Hansen next contends the district court erred in refusing to grant a new trial. We review a new trial ruling based on the weight of the evidence, which "normally presents a question of fact and not of law," for "a manifest abuse of discretion," "focus[ing] on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1125 (10th Cir.1995) (quotations omitted), cert. denied, 116 S.Ct. 1017 (1996). "So long as a reasonable basis exists for the jury's verdict, we will not disturb the district judge's ruling." Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1519 (10th Cir.1990) (quotation omitted). We have reviewed the cited portions of the record and conclude that the evidence does not so clearly mandate that Sea Ray should be held liable "that reasonable minds could not differ on this result." Id.
 
 
 49
 Monte Hansen finally contends the special verdict form prepared and submitted by the court was ambiguous, overly suggestive of a verdict in favor of Sea Ray, inconsistent with the evidence, and otherwise deficient. The first question on the special verdict form was:
 
 
 50
 Was Sea Ray negligent in the manner it manufactured, repaired or tested the boat and/or was the boat, at the time it was manufactured and sold, unreasonably dangerous due to a defect or defective condition?
 
 
 51
 App. at 1. "Ambiguous" is defined as "[l]iable to more than one interpretation; [ ]uncertain or indefinite." Webster's II New Riverside University Dictionary 99 (1988). Had the jury answered "yes" to this question, there may have been need for some clarification. However, its "no" answer is clear. It is not subject to two different meanings and thus is not ambiguous. This was the only question the jury answered. There are thus no inconsistent answers in the special verdict that needed to be reconciled either by the district court or on appeal.[3]
 
 
 52
 Finally, to the extent Monte Hansen is asking this court to reconcile the answer to the special verdict question with the evidence presented, that is another effort to secure review of the weight of the evidence and is precluded by his failure to move for a directed verdict.[4]
 
 
 53
 Sea Ray's Challenge to the Award of Attorney Fees
 
 
 54
 Sea Ray contends the district court erred in its award of attorney fees under the Magnuson-Moss Warranty Act.
 
 
 55
 We review the district court's attorney fee award for abuse of discretion, and will hold the underlying findings of fact reversible only if they are clearly erroneous. A court has abused its discretion when it "based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling."
 
 
 56
 Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir.1995) (citation omitted).
 
 
 57
 The record on appeal relative to the attorney fees issue contains only the pleadings filed in conjunction with the Hansens' motion for fees, a summary order from the district court granting that award, and another summary order denying Sea Ray's motion to alter or amend the judgment (attorney fees). The docket sheet reflects that the district court held a hearing on the fees issue, but a transcript of that hearing is not in the record.
 
 
 58
 As mentioned above, "[a] district court that does not exercise its discretion, or makes a decision without providing reasons, abuses that discretion." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir.1995). We have examined the briefs of the parties contained in the record relative to the fees issue and note that the issue urged by Sea Ray on appeal was argued in its brief to the district court. See Supp.App. 55-63. As noted, the district court held a hearing on this matter, but the transcript is not in the record. A trial judge is obligated to give reasons for a decision, but those reasons can be provided by statements on the record or by written opinion, as long as there is some record of the court's reasoning to facilitate appellate review.
 
 
 59
 Because the issues Sea Ray urges here were before the district court, we presume that the court addressed those issues at the hearing. However, since we do not have a transcript of the hearing, we have nothing in the record to indicate how the district court exercised its discretion in arriving at its decision to grant the Hansens attorney fees. As we have nothing to review on appeal, the judgment of the district court to grant the Hansens' motion for attorney fees must stand. See Deines, 969 F.2d at 979-80.
 
 
 60
 The Hansens' motions to dismiss the appeal in case No. 95-4190 and for damages for delay and costs are both DENIED. The judgments of the district court in cases No. 94-4252 and No. 95-4190 are AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [1]
 We note that the record on appeal does not contain all of the materials that were before the district court when it ruled on the summary judgment motion
 
 
 [2]
 Our conclusion that the district court had made a factual determination regarding the question of Mrs. Hansen's presence in the zone of danger is reinforced by the court's later order denying the Hansens' motion to reconsider the summary judgment. There the court stated:
 Plaintiff Linda Hansen urges this court to reinstate her claim for negligent infliction of emotional distress. In support of her motion, plaintiff argues that this court has never made a determination that she was not in the "zone of danger."
 Having reviewed the facts of this case, this court reaffirms its finding that plaintiff Linda Hansen was not in actual danger of harm, even though she may have believed that she was. This matter was certified to the Supreme Court of Utah after such a factual determination had been made by this court. In granting summary judgment conditionally before the certification, by Order dated December 22, 1989, and again after the opinion of the Utah court was rendered, by Order dated June 1, 1992, this court determined on the basis of all facts before it that plaintiff Linda Hansen was not actually within the "zone of danger" as required by Johnson v. Rogers, 763 P.2d 771 (Utah 1988).
 Supp.App. at 8-9.
 
 
 [3]
 We note additionally that, to the extent Monte Hansen is challenging the special verdict form itself, as opposed to the answer(s) given by the jury in response to the form, he has waived his opportunity to challenge the form because he failed to object to the special verdict form at trial. See Kloepfer v. Honda Motor Co., 898 F.2d 1452, 1456 (10th Cir.1990)
 
 
 [4]
 Fugitt v. Jones, 549 F.2d 1001 (5th Cir.1977), is not to the contrary. That case involved inconsistent answers to more than one special verdict question. The court in Fugitt held that "[a] motion for directed verdict was not required to preserve this form of the issue." Id. at 1004